HAWKS, Assignee, vs. PRITZLAFF.

*October 16, 1880 — February 8, 1881.*

(1) STARE DECISIS: *Effect to be given to former decisions of this court.* (2) *Voluntary general assignment; assignee's rights only those of assignor.*

1. Where the precise point in controversy in an action has been once decided by this court, in a case where it has properly arisen, and such decision has not been overruled by this court, it will be treated as settled, except where the court is asked or deems it proper to review and overrule it; and this will not be done without the most cogent reasons, where rights of property have for a long time been adjusted according to such decision.

2. It was established as the law of this state by *Estabrook v. Messersmith*, 18 Wis., 551, that in case of a voluntary general assignment for the benefit of creditors, the assignee takes no rights of action as against previous grantees or mortgagees of the property, which the assignor himself would not have; and that decision is followed in this case.

3. *Nichols v. Kribs*, 10 Wis., 76; *Thompson v. Hintgen*, 11 id., 112; and *Reiley v. Johnston*, 22 id., 279 — distinguished.

APPEAL from the County Court of *Milwaukee* County.

Action for a conversion of personal property. Plaintiff appealed from a judgment in favor of the defendant.

For the appellant there were briefs by *Markhams & Smith*, and oral argument by *E. P. Smith*.

For the respondent there was a brief by *David S. Ordway*, in behalf of *Finches, Lynde & Miller*, and oral argument by *Mr. Ordway*.

The following opinion was filed November 10, 1880:

ORTON, J. The appellant predicates his right to the property in controversy upon a common-law assignment executed by one William A. Hogg to him, February 6, 1880, for the benefit of creditors. The respondent claims it by virtue of a bill of sale, absolute in its terms, executed to him by said Hogg, May 7, 1879, but which was intended to operate as a chattel mortgage to secure certain indebtedness of said Hogg

to him, a considerable portion of which remains due and unpaid. The property remained in the possession of Hogg until the appellant took possession of it at the date of the assignment; and on the 14th day of February, 1880, the respondent took possession of it by virtue of said bill of sale. It is conceded that the bill of sale was never filed in the proper office, where, as a chattel mortgage, it should have been filed according to the statute; and whether it should have been so filed, for the purposes of this case, need not be decided. It will be assumed that, if it was intended as a chattel mortgage, and the property remained in the possession of Hogg, the vendor or mortgagor, it comes within the statute requiring the filing of chattel mortgages.

The only question, therefore, is, whether this bill of sale, not having been filed, and considered as in effect a chattel mortgage, is valid as against the claim of the appellant as such assignee. There is considerable conflict of authorities upon this question, which has, no doubt, arisen to some extent from the difference in the statutes of various states relating to chattel mortgages, assignments and trusts. The learned counsel on both sides have, with great ability and research, reviewed most of these authorities, in order to educe the doctrine supported by the better authority. It would be but respectful to the learned counsel if we should undertake to follow this investigation, and pass upon the question as an original one in this court. But we deem it especially proper in this case to say that, when the precise point in controversy has been once decided by this court in a case where it has properly arisen, and such decision has not been overruled by this court, it will be treated as settled in future cases, except where, conceding the decision, this court is asked or deems it proper to review or overrule it. And even then it should not be disturbed after it has long stood at rest as an established principle of law, affecting the rights of property, which have for a long time been adjusted in accordance with it, without the most cogent.

reasons. Affirmatively and *prima facie*, at least, it will stand as the law of all cases, and require no authorities or decisions elsewhere to support it. One of the learned counsel did not even allude to any decision of this court of the question, and the other one alluded to it only incidentally as a make-weight in the preponderance of authorities.

As we view the effect of the decision in *Estabrook v. Messersmith*, 18 Wis., 551, it is direct and positive authority upon this point. So viewing it, it would tend to weaken and underrate the authority of former decisions of the court at this time to examine the question as an original one, and the authorities elsewhere upon it. The language of this court in that case upon this point is clear, unambiguous and unequivocal: " The assignor, having himself no property in the goods which he had fraudulently transferred, could pass none to his assignee." To support this principle, the language of Lord TENTERTON, in *Jones v. Yates*, 9 Barn. & Cress., 532, is cited by Chief Justice DIXON, as follows: " That, with the exception of a compulsory assignment under the bankrupt law, which stands upon peculiar grounds, he knew of no instance, and none had been mentioned at the bar, where the representatives could sue where the party represented could not." In addition to this unquestionable authority that a voluntary assignee is the *representative* of the assignor alone, in respect to the title of the property assigned, the learned chief justice predicates the decision upon this reason alone: " The transfer from Roger Bromley to his assignees being voluntary, he could not give them the right of action *where none existed in himself*, and that remained as before in his creditors."

It is too clear to need authority, that in this case the assignor, Hogg, could not himself question the validity of his transfer of the property to the respondent. Then it follows that his voluntary assignee, the appellant, cannot do so. The relations of a voluntary assignee to the property assigned are exclusively as representative of the assignor, and not at all of his

creditors, and such assignee can only avoid a previous transfer of the property by the assignor where the assignor can do so himself, and for the same causes. This is clearly the effect of the above decision, if it have any effect whatever. The only remaining question is, whether this court has in other cases, as intimated by the learned counsel of the appellant, established in principle a different doctrine. A brief reference to the cases cited in support of this intimation will be sufficient to show that they can have no such construction.

In *Nichols v. Kribs*, 10 Wis., 76, it is held that an assignee of the judgment defendant is entitled to make the objection to a judgment by confession against the assignor, that no sufficient statement of the cause of action had been made. In *Thompson v. Hintgen*, 11 Wis., 112, it is held that the judgment creditors of the defendant in the judgment by confession could make the same objection.

In *Reiley v. Johnston, Ex'r*, 22 Wis., 279, the defendant to a judgment by confession brought suit in equity to vacate the judgment and the levy of an execution upon the same, and to enjoin sale of the property taken under the execution, on the ground of insufficiency of the statement of the facts constituting the defendant's liability. The decision of this court adverse to the relief asked was rendered upon the grounds that the plaintiff did not positively show that such statement was insufficient, or the particulars in which it was not sufficient, and that there was a sufficient amount due to justify the levy shown, and that no equities were shown. This is all that the court pretended in that case to decide. There are, perhaps, some expressions in the opinion which appear to be in conflict with the decision in *Thompson v. Hintgen, supra;* but they form no part of the decision in the case, and the above cases were not alluded to in the opinion.

*By the Court.*— The judgment of the county court is affirmed, with costs.

A motion for a rehearing was denied February 8, 1881.