THE STATE, Respondent, vs. NATIONAL ACCIDENT SOCIETY OF NEW YORK, Appellant.

*April 5 — May 16, 1899.*

*Life and accident insurance: " Mutual or assessment plan: " Foreign corporations: License fees: Limitation of actions.*

1. An insurance corporation furnishing life or casualty insurance in consideration, in whole or in part, of contributions by its members on a basis of equality, sufficient to meet its expenses and matured memberships as the necessities therefor arise, is a benefit or beneficiary corporation furnishing casualty or life insurance upon the mutual or assessment plan within the meaning of ch. 418, Laws of 1891, exempting certain insurance organizations from the general insurance laws of the state.

The State vs. National Accident Society of New York.

2. An insurance corporation not organized under the laws of this state, that, in compliance with the statute, maintains an attorney within this state upon whom process can be served in actions commenced in its courts, is nevertheless a nonresident within the meaning of sec. 4231, R. S. 1878, and not entitled to the benefit of the statutes of limitations.

   [Syllabus by MARSHALL, J.]

3. CASSODAY, C. J., dissenting, is of the opinion that the state cannot recover of an insurance company a license fee which might have been exacted at the time the license was issued, but which the insurance commissioner did not exact, or suppose he had any right to exact, until several years afterwards.

APPEAL from a judgment of the circuit court for Dane county: R. G. SIEBECKER, Circuit Judge. *Reversed.*

Five successive yearly licenses were issued by the insurance commissioner to the defendant to carry on in this state the business of accidental insurance according to its authorized plan as exhibited to such commissioner. The first license was dated April 29, 1891, and the last February 18, 1895. Soon after the commencement of the last license year the license for such year was duly canceled by the commissioner and the defendant ceased doing business in this state. No compensation was demanded of, or paid by, defendant for either of the several licenses mentioned, except such as was required of fire insurance companies, it being supposed that ch. 503, Laws of 1887, permitting the licensing of foreign accidental insurance companies doing business upon the mutual or assessment plan, upon complying with the statutes in regard to fire companies as to annual statements, fees, and taxes, did not make such companies subject to sec. 1220, R. S. 1878, requiring every company transacting the business of accidental insurance in this state to pay an annual license fee of $300. Subsequent to the withdrawal of defendant from this state this action was brought to recover from it the sum of $1,500 and interest, upon the theory that the law of 1887 was an amendment, merely, to sec. 1220, R. S. 1878,

as to compensation to be paid for the privilege of doing the business of accidental insurance in this state, and that by accepting the several licenses defendant became indebted to the state for the license fee of $300, prescribed by such section for each such license. The complaint stated facts requisite to a recovery on plaintiff's theory. Defendant answered, alleging in substance that during the time covered by its several licenses it was authorized to do, and did, only the business of a nonfraternal beneficiary corporation, furnishing accidental insurance upon the mutual or assessment plan, within the meaning of ch. 418, Laws of 1891, which excepted all such corporations from the general insurance laws of this state, and that all of the licenses mentioned in the complaint were issued thereunder. All allegations of the complaint inconsistent with that theory were put in issue, and in addition the six-year statute of limitations upon actions for the recovery of money upon contract was pleaded. The cause was tried by the court and resulted in findings of fact and conclusions of law, omitting formal matters, in substance as follows:

(1) Defendant, during the time mentioned in the complaint, was a nonfraternal corporation transacting the business of life and accidental insurance upon the mutual or assessment plan, without any social, charitable, or benevolent features in its organization or in the conduct of its business.

(2) Defendant applied for a license to transact the business of accident insurance in the state of Wisconsin, January 1, 1891. License was issued thereon April 29, 1891, good until March 1, 1892. The license was accepted by defendant prior to May 9, 1891, and under it defendant did business till its termination.

(3) Similar licenses were issued to defendant for the license years commencing on the 1st days of March, 1892, 1893, 1894, and 1895, and it did business under all of them.

(4) No demand was made upon defendant for the pay-

ment of a $300 license fee under sec. 1220, R. S. 1878, till after it ceased to do business in this state, but before the commencement of this action payment of such fee for each of the years for which a license was issued as aforesaid, amounting in all to $1,500, was demanded of defendant, together with interest on each of the annual fees at the legal rate from the time it became due. The sum of $1,500 is due according to the demand of the state, with interest as demanded, amounting in all to $2,013.75.

(5) Defendant was, during the life of its said licenses, a foreign accident insurance company doing business upon the mutual or assessment plan as provided in ch. 503, Laws of 1887, and not one of the corporations or associations mentioned in ch. 418, Laws of 1891.

(6) The statute of limitations does not apply to plaintiff's claim or any part of it, because the defendant was and is a foreign corporation and never had a residence in this state.

(7) Plaintiff is entitled to judgment in accordance with the foregoing.

Judgment was entered accordingly, from which this appeal was taken, appropriate exceptions having been filed to the findings of fact, requisite to present for review the questions discussed in the opinion.

For the appellant there was a brief by *Bashford, Aylward & Spensley*, and oral argument by *R. M. Bashford*. To the point that the bar of the statute of limitations pleaded in the answer constituted a defense, they cited R. S. 1878, sec. 1915, subd. 2, and sec. 4229; *Wall v. C. & N. W. R. Co.* 69 Iowa, 498; *Winney v. Sandwich Mfg. Co.* 86 Iowa, 608; 6 Thompson, Corp. § 7841; *Huss v. Central R. & B. Co.* 66 Ala. 472; *Lawrence v. Ballou*, 50 Cal. 258; *Express Co. v. Ware*, 20 Wall. 543; *Tioga R. R. v. B. & C. R. R.* 20 Wall. 137; *Larson v. Aultman & Taylor Co.* 86 Wis. 281.

For the respondent there was a brief by the *Attorney General*, and oral argument by *C. E. Buell*, first assistant attor-

ney general. To the point that the defendant was not a fraternal or beneficiary corporation, society, order, or association for the relief of members or beneficiaries furnishing life or casualty insurance or indemnity upon the mutual or assessment plan, and hence did not come under the provisions of ch. 418, Laws of 1891, they cited 1 Joyce, Ins. §§ 342, 344–346; Niblack, Ben. Soc. § 5; *Berry v. Knights Templars & M. L. I. Co.* 46 Fed. Rep. 439; *State ex rel. Beach v. Citizens' B. Asso.* 6 Mo. App. 171; *State ex rel. Clapp v. Critchett,* 37 Minn. 13; *Farmer v. State,* 69 Tex. 561; *Walter v. Hensel,* 42 Minn. 204; *McConnell v. Iowa M. A. Asso.* 79 Iowa, 757; *Comm. v. Wetherbee,* 105 Mass. 149; *Golden Rule v. People ex rel. Swigert,* 118 Ill. 492; *State ex rel. Att'y Gen. v. Merchants' E. M. B. Soc.* 72 Mo. 146; *Wall v. Equitable L. A. Soc.* 32 Fed. Rep. 276; *Masonic A. Asso. v. Taylor,* 2 S. Dak. 324; ch. 503, Laws of 1887; sec. 1953*b*, S. & B. Ann. Stats.; ch. 334, Laws of 1889; ch. 418, Laws of 1891; *State ex rel. Covenant M. B. Asso. v. Root,* 83 Wis. 667.

MARSHALL, J. It is conceded that if defendant was entitled to the benefit of ch. 418, Laws of 1891, during the period covered by its several licenses, the judgment appealed from is wrong and must be reversed. That chapter exempts from the general insurance laws of the state imposing on accident insurance companies an annual license fee of $300, every corporation, society, order, or association therein named upon complying with its provisions. The descriptive words of the organizations covered by the act are contained in the following: "No fraternal or beneficiary corporation, society, order or association, furnishing life or casualty insurance or indemnity upon the mutual or assessment plan, organized under the laws of any other state or territory of the United States or District of Columbia, or foreign countries, . . . shall transact business in this state," except upon compliance with the provisions

of this act. "All beneficiary corporations, societies, orders or associations, . . . admitted to do business in this state under the provisions of this act, . . . are hereby declared to be mutual benefit associations, and exempt from the general insurance laws of this state and shall be subject only to the provisions of this act." It will be observed that the exemption covers fraternal organizations and beneficiary organizations as well, subject to the test of furnishing casualty or life insurance upon the mutual or assessment plan, clearly indicating that, unless the use of the word "beneficiary" or "benefit" calls for some feature other than that of mutuality of pecuniary risk as to the amount of money necessary to be contributed to meet the requirements for expenses and matured memberships, the existence of some social, charitable, or benevolent feature is not necessary to satisfy the act. The existence or nonexistence of the features mentioned was the test the trial court applied to the case, and finding that defendant was void of any such feature decided that it was not a beneficiary corporation within the meaning of the act under consideration, but was an accident insurance company furnishing insurance on the mutual or assessment plan, hence liable to the requirements of the general insurance laws. There is no question but that defendant answers all the requirements of the law of 1891 as to mutuality of risk. Its scheme of insurance required a small membership or admission fee at the time of the issuance of the certificate of membership or policy, and required each member thereafter, during the life of his membership, to contribute to the funds of the corporation on the basis of mutuality between members such sums as might be demanded by its board of directors for the purpose of paying the general expenses of the organization, and the expenses. of paying, adjusting, compromising, settling, or defending claims for benefits, seven twelfths of each assessment to be devoted to the latter purpose and the balance

to the former.   There was clearly the mutual assessment
feature of the act of 1891 and there was the benefit grow-
ing out of the scheme of the association which contemplated
calls for contributions from members, determinable, as to
amount, by the actual needs of the association in order to
furnish relief to its members according to their insurance
contracts.   Those characteristics alone, the trial court de-
cided, were not sufficient to constitute a beneficiary organi-
zation furnishing casualty or life insurance on the mutual
or assessment plan.

There is no need in this case of determining the precise
meaning of the term " beneficiary " or " benefit " as descrip-
tive of a species of insurance corporations or societies.   It
would be a task by no means free from difficulty.   If it
were undertaken we should find that such terms have not
always been used in exactly the same sense in legislative
enactments, and that the question has usually been found to
be, in the adjudged cases, not what is their proper significa-
tion generally speaking, but in what sense were the terms
used by the framers of the particular law under considera-
tion.   In Bacon's work on Benefit Societies (§§ 23 to 52, in-
clusive), after a careful review of many cases on the subject,
it is said, in substance, that the business of benefit societies
is substantially that of furnishing life insurance; that the
predominant feature of them and life insurance companies
is the same, as to the payment of a definite sum to a desig-
nated beneficiary on the death of a member insured; that
the essential difference between the two is the manner in
which the fund is accumulated to meet matured claims.   In
life insurance companies it is accumulated by the payment
of certain amounts at certain intervals, agreed upon in ad-
vance and presumed to be sufficient, based upon the prob-
able duration of human life and the value of the use of the
fund till needed to pay the expenses of conducting the busi-
ness of the company and the claim at maturity, and also the

hazard that maturity may occur short of the period of an average life; while the fund of a benefit society to meet matured claims is accumulated as required, upon some plan that will effect the purpose of the organization and meet the legitimate demands upon it as they mature, but limit the calls to necessities as they arise. In the latter class members contribute so much as is necessary to satisfy the matured claims of beneficiaries for relief, taking into account the emergency fund, if there be one. In the former class the policy holders pay certain fixed sums at certain fixed intervals in consideration of an agreement on the part of the insurer to pay a certain sum to a designated beneficiary upon the happening of a specified contingency. The one is in the nature of relief from misfortune at the mutual expense of all the members of the association; the other is in the nature of an exchange of equivalents, such sum of money being paid in from time to time, according to contract, as, with its accumulations less a proportional expense chargeable to the contract, will equal the amount of the matured claim at the end of an average life. The features referred to as distinguishing benefit societies from life and accident insurance companies were deemed by this court to be what the legislature had in mind in passing the act of 1891, when called upon to construe the law, soon after its enactment, in the case of *State ex rel. Covenant M. B. Asso. v. Root*, 83 Wis. 667. It was there held, in effect, upon careful comparison of the different parts of the act and the history of similar legislation in this state, that an insurance organization furnishing the kind of insurance mentioned in the act, upon a plan that required the policy or certificate holders to contribute to the funds of the association to meet the demands upon it, more or less according to its needs, according to the determination of its governing body and as called for by them in the manner agreed upon in the insurance contracts, was a beneficiary association furnishing life and

casualty insurance on the mutual or assessment plan.   The presence or absence of social, charitable, or benevolent features in the organization was not deemed the test contemplated by the law, but whether the payment of matured claims was dependent upon the contributions of members, not absolute in amount, but determinable from time to time, to some extent at least, by the governing body of the society according to its needs.

The construction of the law of 1891, given as stated, doubtless governed its administration by the insurance department of the state from the time the decision was rendered down to about the time of the commencement of this litigation, covering a period of several years.   It cannot now be changed.   A construction so long followed must be considered a part of the legislative enactment the same as if plainly written into it originally.   It cannot now be changed by construction any more than plain language used by the lawmaking power can be added to or taken from by judicial construction.

It follows from what has preceded that defendant is a beneficiary corporation furnishing casualty or life insurance upon the mutual or assessment plan, hence, admittedly, was exempt from the general insurance laws of the state as to the annual $300 license fee, except for the first license year, which commenced before the act of 1891 went into effect.   As to that year appellant claims the benefit of the exemption, notwithstanding the license was issued and received when the fee of $300 was required to entitle its holder to do business under it, because the fee which it then conceded was required, being a sum other than the $300 fee, was not actually received by the state from defendant till two days after the change in the law.   The mere fact that the commissioner of insurance irregularly permitted defendant to delay payment for the license till some days after it was issued and received, did not postpone its effect so as to

entitle defendant to the benefit of the subsequent change in the law. The commissioner had no authority to extend credit to defendant. When the license was issued, received, and retained by defendant, the right of the state to the statutory fee of $300 as the law then existed became fixed. The trial court found that the acceptance of the license preceded the change in the law, which is correct. It was received and retained for some ten days before the then-conceded fees were transmitted to the state and before the publication of the new law. That circumstance amply warranted the finding on the subject of the acceptance of the license. It follows that defendant became liable to the state for the $300 fee for the period covered by the first license, and for that amount, with interest, it was liable in this action unless the claim was extinguished by the six-years statute of limitations, which was duly pleaded.

The conclusive answer to the contention that the statute of limitations pleaded bars the claim for the first license fee, is that defendant is a foreign corporation and has never been a resident of this state. By sec. 4231, R. S. 1878, it is excluded from the benefits of exemption statutes. We are not unmindful of the fact that the doctrine, that when a corporation, pursuant to a statutory requirement, maintains an attorney in the state upon whom process can be served in actions commenced in the courts of this state to enforce causes of action arising here, it is a resident of the state for all the purposes of litigation and therefore entitled to the benefit of exemption statutes. Nevertheless it seems clear that such doctrine results from a judicial reading into plain statutes words of exception not found there or contemplated by the lawmaking power, in violation of that inflexible rule that courts must take such statutes and enforce them as they find them, nothing adding thereto or taking therefrom. Moreover, notwithstanding the suggestion of counsel for appellant to the contrary, it is considered that in *Travelers' Ins. Co. v. Fricke*, 99 Wis. 367, it was held by this court that

a foreign corporation is not entitled to the benefit of our statutes of limitations. Such benefit was insisted upon in that case, the right in that regard was considered as one of the material points for decision upon one theory of the case, and the proposition was decided adversely to the corporation, though it is true, on another theory, the court held that judgment should go against the corporation independent of whether it was or was not a resident of the state within the meaning of the limitation exemption act. The decision of the question here presented, however, as there decided, is deemed binding upon the court under the doctrine of *stare decisis* till overruled. What was said was the judgment of the court upon a matter material to the cause in one view of it, and a matter presented for decision. The result therefore has the same force as to subsequent litigation as if such matter were the sole question upon which the cause turned. *Brown v. C. & N. W. R. Co.* 102 Wis. 137; *School Trustees v. Stocker*, 42 N. J. Law, 115; *Quackenbush v. W. & M. R. Co.* 71 Wis. 472; *Case v. Hoffman*, 100 Wis. 314, 338.

If the question, of whether the mere fact that a corporation maintains a resident attorney upon whom process can be served for the purpose of litigation in the courts of this state takes such corporation out of the general exception of nonresidents from the benefits of limitation statutes, were presented here for the first time, the change in sec. 4231, made in 1897, would be deemed quite sufficient to show a legislative purpose. not to give nonresidents, generally, the legal status of residents because of the circumstances mentioned, and would be considered controlling if the statute were deemed open to the operation of rules of construction. That amendment expressly conferred the rights of a resident on certain foreign corporations on condition, among other things, of their maintaining a resident attorney to receive service of process in actions commenced in this state on causes of action arising here. That special exception from the general exclusion of nonresidents from limitation

privileges, by implication shows that the legislature supposed all nonresidents to be included in the exclusion, not mentioned in the exception. That is in accordance with a very familiar rule of statutory construction.

*By the Court.*— The judgment of the circuit court is reversed, and the cause remanded with directions to render judgment in favor of the plaintiff for the $300 license fee which should have been paid by defendant for its first license, with interest thereon from the time such fee was due to the state, and with the costs of the action as taxed and allowed.

CASSODAY, C. J. (dissenting). Although the legislature had plenary power to prescribe the conditions upon which foreign insurance companies might be allowed to do business in this state, yet I dissented in *Travelers' Ins. Co. v. Fricke*, 99 Wis. 376–378, on the ground that the statute was not sufficiently broad to authorize the commissioner of insurance to exact, as a condition precedent to the issuance of a new license, the payment of a fee which, as the statute has recently been construed by this court, might have been exacted in granting a license which had long before expired, but which was never in fact exacted. The case at bar is a straight action of *assumpsit*, and it is held that the state may recover in this action on contract $300, as a license fee for the year 1891, which the insurance commissioner never until recently exacted, nor supposed he had any right to exact, and which the defendant never promised to pay. Under such circumstances, I am unable to perceive upon what theory the defendant can be held liable for the amount mentioned upon an implied contract, to which the defendant never assented, and which in fact was never made.

On the right of a foreign corporation to plead the statute of limitations, see note to *Winney v. Sandwich Mfg. Co.* (86 Iowa, 608), in 18 L. R. A. 524.— REP.