LONSTORF, Appellant, vs. LONSTORF, Respondent.

*April 21—May 29, 1903.*

*Husband and wife:* Consortium: *Alienation of husband's affections: Cause of action: Right of action in wife:* Stare decisis.

1. Ordinarily certainty of the law is more essential to justice than absolute correctness, and a rule of law adopted and long adhered to should be followed, unless *obiter dictum*, or unless conflicting decisions thereon have been made by inadvertence or otherwise, and the position of the court is already uncertain.
2. By the common law the wife had no property right in the performance of the marital duties of her husband.
3. Sec. 2345, Stats. 1898, enabling a married woman to bring an action in her own name for any "injury to her person or character," cannot be construed either to confer a new right for injuries resulting from enticing away the husband, to the interruption or loss of his *consortium*, or to confer a right to sue for any such injuries.

   CASSODAY, C. J., and SIEBECKER, J., dissent.

APPEAL from an order of the superior court of Milwaukee county: J. C. LUDWIG, Judge. *Affirmed.*

The appeal is from an order sustaining a demurrer to plaintiff's complaint charging that the defendant, her mother-in-law, maliciously, by persuasion and threats, induced plaintiff's husband to abandon and refuse to live with or support her, whereby his affections became alienated, and plaintiff lost his *consortium,* society, comfort, aid, and support, to her damage.

The cause was submitted on the brief of *Sylvester, Scheiber & Orth,* for the appellant, and on that of *Fiebing & Killilea,* for the respondent.

Dodge, J.    This is a direct application to this court to reconsider the questions decided in *Duffies v. Duffies,* 76 Wis. 374, 45 N. W. 522, in 1890, and to overrule the conclusions there reached, for the present action is in no wise distinguishable from that.    The trial court properly considered itself bound by the law of that case, but it is argued this court has both the power and duty, in a proper case, to correct mistakes into which it has at any time fallen.    That it has such power results from its ability to execute such judgment as it may render.    The irresponsibility of its power to be arbitrary is, however, the strongest argument against the propriety of any such conduct.    Nevertheless, it must be conceded that cases may arise when a court ought to recognize that it has fallen into error, and should declare that its former enunciation of a rule of law is retracted.    Such cases are, however, extremely rare, unless the situation be involved by other circumstances; as where the earlier pronouncement was mere *obiter dictum,* or when conflicting decisions have already been made by inadvertence or otherwise, and the position of the court is already uncertain.    But for some such circumstance courts should ordinarily bow to the considerations that certainty of the law is more essential to justice than absolute correctness; that a rule of law adopted and long adhered to may

have reasons to warrant it which were apprehended by the judges who declared it, and are approved by the people who, having authority to change, have abided by it, although no such reasons are discovered by those later considering it. 1 Blackstone, Comm. 70 *et seq.; Pratt v. Brown,* 3 Wis. 603, 609; *Phillips v. Albany,* 28 Wis. 340, 357; *Hawks v. Pritz-laff,* 51 Wis. 160, 7 N. W. 303; *Case v. Hoffman,* 100 Wis. 314, 339, 75 N. W. 945; *State v. National Acc. Soc.* 103 Wis. 208, 216, 79 N. W. 220; *Harrington v. Pier,* 105 Wis. 485, 493, 82 N. W. 345; *Becker v. Chester,* 115 Wis. 90, 130, 91 N. W. 87.

Examining the case of *Duffies v. Duffies* in the light of the record and briefs filed therein, we find two important questions there considered—one of general law, one of construction of a statute. The first was whether a wife had, by the common law, any property right in the performance of the marital duties of her husband—in his *consortium,* consisting of support, counsel, assistance, and society—such as he undoubtedly had in the reciprocal duty of the wife to her husband. That question was a disputed one, and not without authority upon both sides, notably the differing opinions of Lords CAMPBELL and WENSLEYDALE in *Lynch v. Knight,* 9 H. L. Cas. 577; 3 Blackstone, Comm. 143; *Doe v. Roe,* 82 Me. 503, 20 Atl. 83; *Logan v. Logan,* 77 Ind. 559; *Foot v. Card,* 58 Conn. 1, 18 Atl. 1027; *Bennett v. Bennett,* 116 N. Y. 584, 23 N. E. 17. Among the arguments *pro* and *con* were those of general policy—whether such actions would be most promotive of justice or mere harassment and vexation. See *Doe v. Roe, supra.* That the whole question was most vigorously debated is apparent from the briefs presented. That it was most earnestly and carefully considered in all its phases by the court is rendered certain by the fact of difference of opinion among its members and the very persuasive dissenting opinion filed by the present Chief Jus-

tice. To such a situation are applicable the words of SMITH, J., in *Pratt v. Brown,* 3 Wis. 603:

"When a principle of law, doubtful in its character, or uncertain in the subject-matter of its application, has been settled by a series of judicial decisions, and acquiesced in for a considerable time, . . . courts will hesitate long before they will attempt to overturn the result so long established. So when it is apparently indifferent which of two or more rules is adopted, which [ever] one is adopted by judicial sanction it will be adhered to, though it may not, at the moment, appear to be the preferable rule."

The other question for decision was whether our statute, still unchanged in sec. 2345, Stats. 1898, either conferred upon a wife a right not existing at common law, or enabled her to sue alone to vindicate such right, if any existed. That statute enabled a married woman to bring action in her own name for any "injury to her person or character." Such words in other statutes had already received construction in *Gibbs v. Larrabee,* 23 Wis. 495; *Wagner v. Lathers,* 26 Wis. 436, and *Wightman v. Devere,* 33 Wis. 570, 575, excluding from their application injuries to relative rights of persons. Many cases from other states were cited construing statutes of more or less similarity, and were considered carefully, notably *Mulford v. Clewell,* 21 Ohio St. 191, in contrast with *Westlake v. Westlake,* 34 Ohio St. 621, and *Van Arnam v. Ayers,* 67 Barb. 544, with *Bennett v. Bennett,* 116 N. Y. 584, 23 N. E. 17. The result reached was that our statute could not be construed either to confer a new right for injuries resulting from enticing away the husband, to the interruption or loss of his *consortium,* or to confer a right to sue for any such injuries. The efficacy and permanence of a construction of one of our own statutes, deliberately declared by this court and acquiesced in for years less than those which have elapsed since 1890, is emphatically declared in *State v. National Acc. Soc.* 103 Wis. 208, 79 N. W. 220.

In the opinion in *Duffies v. Duffies,* the attention of the

legislature was expressly challenged to the question whether the rule there laid down was in accord with the public policy of this state, of which that body is the constitutional declarant; but no modification of the rule has been made, although in several other states, where a similar rule had been adopted by the courts, the legislature did act to change it, notably in Ohio, Indiana, and New York. Meanwhile, the rule of that case has entered into the body of our jurisprudence, has served to guide this court to its conclusions in *Murray v. Buell,* 76 Wis. 657, 662, 45 N. W. 667, and *Selleck v. Janesville,* 104 Wis. 570, 577, 80 N. W. 944, where it is cited, and doubtless indirectly in other cases. Further, the bar and the trial courts have relied upon it, as is evinced by the absence during thirteen years of any submission of the same questions to this court.

In the light of all these considerations, we feel constrained by the rule *stare decisis* to adhere to the law as declared in that case, regardless of whether we should now resolve the questions there decided in the same way, were they presented before us as *res integra.*

*By the Court.*—Order appealed from is affirmed.

SIEBECKER, J. I am unable to concur in the opinion of the court sustaining the demurrer to the complaint. It is stated in the opinion of the court that this case is presented to consider the question determined in *Duffies v. Duffies,* 76 Wis. 374, 45 N. W. 522. In that case the majority of the court ruled that no cause of action existed in favor of the wife at common law for alienating her husband's affections and enticing him away, causing her the loss of his love, affection, companionship, society, and aid. The gist of the decision is in the following statement:

"But we must not forget that to entice away her husband was not a wrong to the wife, and she had no right to his society, and the damages, if any, belonged to him at common law."

The import of this is that to entice away a wife's husband and deprive her of his *consortium* constitutes no injury in the law. As stated in the dissenting opinion of Chief Justice CASSODAY in that case:

"There seems to be high authority for saying that at common law an action of damages could be maintained for the alienation and loss of the affections and society of the husband from his wife."

The English cases seem to give no decisive precedent. In the case of *Lynch v. Knight,* 9 H. L. Cas. 577, the question arose, and though often referred to as an authority declaratory of the common law, both in support of as well as against the existence of such a cause of action in favor of the wife, it is not received as decisive on the question, there being a marked difference in the opinion of the judges. No other English case upon the subject has come to my notice. This is, however, satisfactorily explained upon the grounds stated by VANN, J., in *Bennett v. Bennett,* 116 N. Y. 584, 23 N. E. 17:

"The absence of strictly common-law precedents is not surprising, because the wife could not bring an action alone owing to the disability caused by coverture, and the husband would not be apt to sue, as by that act he would confess that he had done wrong in leaving his wife."

In the United States this court and the court of Maine seem to stand alone in the extreme position that enticing away a wife's husband and depriving her of his *consortium* is "no wrong to his wife, and she had no right to his society," and therefore such a loss gives her no cause of action in the law against the guilty party. Elementary writers of repute assert that this cause of action existed in the law. Bigelow, Torts, p. 153:

"To entice away or corrupt the mind and affection of one's consort is a civil wrong, for which the offender is liable to the injured husband or wife. The gist of the action is not the

loss of assistance but the loss of *consortium* of the wife or husband, under which term are usually included the person's affections, society, or aid."

Cooley, in his work on Torts (note 2, p. 227), says:

"We see no reason why such an action cannot be supported where by statute the wife is allowed to sue for personal wrongs suffered by her."

The reasons and principles announced as the grounds of the decision in *Duffies v. Duffies* do not appear to be regarded as well founded in the law by the courts which have considered and decided the question. In *Foot v. Card,* 58 Conn. 1, 18 Atl. 1027, it is stated:

"Whatever inequalities of right as to property may result from the marriage contract, husband and wife are equal in law in one respect, namely, each owes to the other the fullest possible measure of conjugal affection and society—the husband to the wife all that the wife owes to him. Upon principle, this right in the wife is equally valuable to her as property as is that of the husband to him. Her right being the same in kind, degree, and value, there would seem to be no valid reason why the law should deny to her the redress which it affords to him."

Though this right has at times been denied upon the grounds stated in 3 Blackstone, Comm. 143:

"The inferior hath no kind of property in the company, care, or assistance of the superior, as the superior is held to have in those of the inferior; therefore the inferior can suffer no loss or injury."

The court in *Foot v. Card, supra,* observes with persuasive force:

"We are unable to find any support for the denial in this reason, and the right, the injury, and the consequent damage being admitted, then comes in operation another rule, namely, that the law will permit no one to obtain redress for wrong except by its instrumentalities, and it will furnish a mode for obtaining adequate redress for every wrong. This rule, lying at the foundation of all law, is more potent than, and takes precedence of, the reasons that the wife is in this regard out of the pale of the law because of her inferiority."

The principle seems recognized that a wife, if injured in a trespass or other actionable wrong, had a cause of action which would survive to her, upon the husband's death, at the common law. If an injury resulted therefrom to both husband and wife, they were both required to be parties to the suit during his life, but if he died the right survived, and she could sue alone. Such personal rights were suspended on account of the want of a right to enforce them during coverture, but they were not annihilated. Reeves, Dom. Rel. 87; Bishop, Mar. Wom. § 171; *Johnson v. Dicken,* 25 Mo. 580. If, then, the wife had such rights in the law, but her legal existence, being merged into that of her husband during coverture, thereby prevented from suing in her own name, does not reason and logic declare that, the statutes enabling her to sue in her own name for any injury to her person or character, the same as if she were sole, such disability is removed? The purpose and effect of this legislation, as understood and construed by the courts, seem clearly to give the wife a standing in law distinct from her husband, and endowed with the legal power to enforce her rights as though she were sole. As a result, she is vested with the rights and obligated to all the duties as to her separate estate, her person, and her character, that the law bestows upon other persons under like circumstances.

The terms of our statutes, allowing her to recover "for any injury to her person or character the same as if she were sole," when considered in their full purpose and effect, it seems were designed to secure to her the legal remedies available for the prosecution of any action to recompense her for injuries sustained to her person, character, or separate estate. Many of the courts of the United States have declared that the injury complained of in this case comes within the class covered by these enabling statutes. This conclusion seems to have the support of the greater weight of authority, and, in my opinion, is founded upon sound reason. Among the many

cases on this subject are the following: *Warren v. Warren,* 89 Mich. 123, 50 N. W. 842; *Price v. Price,* 91 Iowa, 693, 60 N. W. 202; *Lockwood v. Lockwood,* 67 Minn. 476, 70 N. W. 784; *Foot v. Card,* 58 Conn. 1, 18 Atl. 1027; *Gernerd v. Gernerd,* 185 Pa. St. 233, 39 Atl. 884; *Wolf v. Frank,* 92 Md. 138, 48 Atl. 132; *Holmes v. Holmes,* 133 Ind. 386, 32 N. E. 932; *Bennett v. Bennett,* 116 N. Y. 584, 23 N. E. 17; *Clow v. Chapman,* 125 Mo. 101, 28 S. W. 328; *Betser v. Betser,* 186 Ill. 537, 58 N. E. 249; *Humphrey v. Pope,* 122 Cal. 253, 54 Pac. 847; *Waldron v. Waldron,* 45 Fed. 315.

Upon these grounds it appeared to me this case presented an occasion for this court to re-examine the question involved. It is stated in the opinion of the court:

"Nevertheless it must be conceded that cases may arise where a court ought to recognize that it has fallen into error, and should declare that its former enunciation of a rule of law is retracted. Such cases are, however, extremely rare, unless the situation be involved by other circumstances, and where the earlier pronouncement was mere *obiter dictum,* or when conflicting decisions have already been made by inadvertence or otherwise, and the position of the court is already uncertain."

The doctrine of *stare decisis,* I think, does not hold the court to such a strict limitation to review its decisions as here indicated. Blackstone's statement of the doctrine is:

"The doctrine of the law is this: that precedents and rules must be followed unless flatly absurd or unjust; for, though their reasons be not obvious at first view, yet we owe such a deference to former times as not to suppose that they acted wholly without consideration."

Though this statement of the law has been subjected to criticism by commentators and judges, it is in substantial accord with the declaration of Chancellor KENT on the subject, who states:

"A solemn decision upon a point of law arising in any given case becomes an authority in a like case, because it is the highest evidence which we can have of the law applicable

to the subject, and the judges are bound to follow that decision so long as it stands unreversed, unless it can be shown that the law was misunderstood or misapplied in that particular case."

It will be perceived that the doctrine as stated by these eminent jurists includes the limitation that the precedent must be a correct and just application of the law. I am not unmindful of the view often announced in decisions, that it is far more important that rules of property and contract should be certain and stable than that they should be settled in any particular way. But other considerations may press themselves upon the court, as stated by Mr. Justice SMITH in *Pratt v. Brown,* 3 Wis. 603:

"But when a question arises involving important public and private rights, extending to all coming time, has been passed upon on a single occasion, and which decision can in no just sense be said to have been acquiesced in, it is not only the right, but the duty of the court, when properly called upon, to re-examine the questions involved, and again subject them to judicial scrutiny."

In *Whereatt v. Worth,* 108 Wis. 295, 84 N. W. 411, this court substantially reaffirms these grounds, and states:

"When, however, the rule of *stare decisis* is invoked to secure adherence to a wrong doctrine, which may be corrected without prejudice to any one other than a party before the court and others similarly situated as regards pending litigation, where no rule of property is required to be changed, courts are not so firmly bound by a previous ruling but that they may correct it with considerable freedom when firmly convinced that it stands in need of correction."

It cannot be asserted that the decision in *Duffies v. Duffies* is the basis of a rule of property or contract. In its effect it has stood to withhold from a class of persons a right to compensation for an injury without forming the basis of any important right of others. Before the submission of the instant case, it stood as the single occasion where this court passed upon the point. In its application of the law, in my opinion,

the decision is incorrect, and if followed as a precedent it deprives a wife of a valuable and just legal right. I think the demurrer should have been overruled.

CASSODAY, C. J. I fully concur in the foregoing opinion of Mr. Justice SIEBECKER.