| 91 | 693 |
| 94 | 604 |

LIZZIE T. PRICE V. HENRY PRICE *et al.*, Appellants.

**Alienation of Husband's Affections: Wife's Right of Action.** Under Code, 2211, allowing a wife to sue for the protection of her rights, she may maintain an action for the alienation of her husband's affections and resulting loss of companionship and support.

**Facts: Verdict Sustained.** That relations of the husband threatened to disinherit him unless he left his wife, that he did leave her, that he, later, asked her to return, that she did so, that while they were living happily together he received letters from those relatives, which he did not show his wife, and that he then left her after striking and threatening to kill her, will sustain a verdict against the relatives.

**Evidence.** Conversations between the husband and his parents, while plaintiff and husband were living with them, may be admitted to explain the relations of the parties and their motives.

**Same: Amount of Defendant's Property** is admissible to show the weight of the threat to disinherit the husband.

**Joint Wrong.** Where parents cause husband and wife to separate, they are jointly liable, though each does not participate in all the acts of the other.

*Appeal from Polk District Court.*—HON. W. F.
CONRAD, Judge.

MONDAY, OCTOBER 8, 1894.

ACTION at law to recover damages alleged to have
been caused by the wrongful acts of defendants, in
injuring the reputation and good name of plaintiff,
and in depriving her of her husband and of a home, in
causing her husband to ill use her and for the loss of
social position, and for mental and physical suffering.
There was a trial by jury, and a verdict for the plain-
tiff in the sum of four thousand dollars. A motion for
a new trial was overruled on condition that one half the
amount should be remitted. That was done, and, from
the judgment rendered against them for the remainder,
the defendants appeal.—*Affirmed.*

*C. C. & C. L. Nourse* for appellants.

*Bishop & Wilcoxen* and *Hume & Dawson* for ap-
pellee.

ROBINSON, J.—On the fourteenth day of April,
1888, the plaintiff married George L. Price, who is a
son of the defendants. She alleges, that soon after the
marriage, the defendants, by means of conversations
and letters, communicated to her husband false, defam-
atory, and slanderous matter concerning her character
and reputation, and made threats and promises to him
for the express purpose and with the malicious intent
to destroy the affection existing between them, and to
excite ill-will and hatred on his part for her, for the
purpose of causing him to abandon her; that the de-
fendants offered him valuable property and large sums
of money if he would abandon her, and threatened to
disinherit him if he did not do so; that in consequence
of the course pursued by the defendants, her husband
became angry with and jealous of her, and cursed,

choked, wounded, and otherwise illtreated her, and abandoned her, in destitute circumstances, when alone among strangers and without help, and deprived her of her home, of the social intercourse and confidence of her friends and of her husband, and of his care, love, confidence, protection, help, and support, and caused her mental and physical pain and suffering.

I.  The judgment in this case was rendered in June, 1891, and the appeal was taken in the next September.  At the October term, 1892, of this court, the appellee filed a motion to affirm the judgment of the district court on the ground that the appeal had been abandoned.  That motion was supported and resisted by affidavits and a partial transcript of the record, and was submitted with the cause for our determination. It is claimed that when the motion was filed the appellants had neither filed nor served any abstract or argument; but, to excuse their failure to comply with the rules in that respect, they show that negotiations for a settlement had been pending for some time, and that a stipulation of settlement had been signed by the parties to the action. A complete abstract has since been filed, with an argument for each party, and the cause is now ready for determination on the merits. The stipulation of settlement was not signed by all the parties interested in the judgment, and never became effectual to end the case.  There is, now, no reason for disposing of it otherwise than on the merits, and the motion to affirm is overruled.

II.  The court charged the jury, in effect, that the plaintiff was entitled to recover "for the loss, if any, she has sustained, of the love, affection, companionship, support, and society of her husband," wrongfully caused by the defendants."  The appellants insist that no action for such loss can be maintained under the laws of this state, that no right of action on such grounds existed at common law, and

that none is given by the statutes of this state. The authorities are not in accord in regard to the rights of the wife, at common law. It was said in *Duffies v. Duffies*, 76 Wis. 374; 45 N. W. Rep. 522, that the common law gave to the wife no cause or right of action for the loss of the society and support of her husband in a case of this kind. That conclusion was based largely upon the fact that under the common law the title to the personal property of the wife was vested in the husband; that he was entitled to her labor, or the proceeds of it; and that an injury to her was, in contemplation of the law, an injury to him alone. In *Doe v. Roe*, 20 Atl. Rep. (Me.), 83, the right of the wife to maintain an action for the alienation of her husband's affections, and for depriving her of his comfort, society, and support, was denied. But in *Bennett v. Bennett*, 116 N. Y. 584, 23 N. E. Rep. 17, it was said that, at common law, the right of action for a wrong committed on a married woman belonged to her, and, although it was necessary for her husband to join in an action to recover damages caused by it, yet it was, in effect, her action. An elaborate discussion of authorities bearing on this question will be found in *Westlake v. Westlake*, 34 Ohio St. 621.

The tendency of legislation in this country is toward making husband and wife equal in law, giving to each the rights possessed by the other, and the legislation of this state is designed to accomplish that end, in most respects. Section 2211 of the Code provides that "a wife may receive the wages of her personal labor and maintain an action therefor in her own name, and hold the same in her own right, and she may prosecute and defend all actions at law or in equity for the preservation and protection of her rights and property as if unmarried." Section 2562 is as follows: "A married woman may in all cases sue and be sued without joining her husband with her, to the same

extent as if she were unmarried, and an attachment or
judgment in such actions shall be enforced by or
against her as if she were a single woman." Other
provisions of the statute give to a married woman the
right to acquire and dispose of both real and personal
property to the same extent and in the same manner
that the husband can property held by him in his own
right, and provide that either the husband or wife
owning property in the possession or under the control
of the other may maintain an action therefor in the
same manner and to the same extent as though unmar-
ried. The wife is liable for civil injuries which she
commits, and her husband is not responsible therefor,
except in cases where he would be jointly liable if the
marriage relation did not exist. The property of each
is exempt from the debts of the other, excepting in a
few cases, and the wife may contract and incur liabilities
which may be enforced by and against her as though
she were unmarried. Code, sections 2202, 2204, 2205,
2212, 2213. It is said in *Foot v. Card*, 58 Conn. 1, 18
Atl. Rep. 1027, that from time immemorial the law has
regarded the right of the husband "to the conjugal
affection and society of his wife as a valuable property,
and has compelled the man who has injured it to make
compensation," and that husband and wife have equal
rights, in this: That each owes to the other the fullest
possible measure of conjugal affection and society. In
this state, the husband is entitled to the earnings of
the wife, when she is not engaged in business on her
own account, and is required to provide for the wife a
reasonable support, according to their rank and station
in society. *Thill v. Pohlman*, 76 Iowa, 638, 41 N. W.
Rep. 385; *Van Doran v. Marden*, 48 Iowa, 188. But
the marriage state is not one entered into for the pur-
pose of labor and support alone. Considerations of
the highest character, as the comfort and happiness of
the parties to the marriage contract, and the welfare of

their children, give to each the right to the affection, companionship, and society of the other, and whoever wrongfully deprives either of that right may be held responsible. As it is a valuable property right when due to the husband, it must be so regarded when due to the wife. That being true, the recovery by her of damages caused by its loss, as well as for loss of support, is authorized by section 2211 of the Code. Nor is the right of recovery by the wife limited to cases where the loss is wrongfully caused by charges affecting her chastity, as suggested by the appellants. Our conclusion is not only in harmony with and authorized by the legislation of this state, but it finds support in numerous decisions of courts of other states. *Westlake v. Westlake*, 34 Ohio St. 621; *Bennett v. Bennett*, 116 N. Y. 584, 23 N. E. Rep. 17; *Holmes v. Holmes*, 32 N. E. Rep. (Ind. Sup.) 932; *Haynes v. Nowlin*, 29 N. E. Rep. (Ind. Sup.) 389; *Seaver v Adams*, 19 Atl. Rep. (N. H.) 776; *Foot v. Card*, 58 Conn. 1, 18 Atl. Rep. 1027; *Warren v. Warren*, 50 N. W. Rep. (Mich.) 843; Cooley, Torts, 228, note. In *Peters v. Peters*, 42 Iowa, 182, it was held that the wife can not maintain an action against her husband for damages caused by an assault and battery, and that section 2211 of the Code refers to and authorizes actions against parties other than the husband. The case of *Callaway v. Laydon*, 47 Iowa, 456, arose under a statute enacted to regulate the sale of intoxicating liquors. The facts involved in those cases were, in legal effect, so unlike those involved in this case that the opinion in neither of those cases can properly be regarded as in conflict with the conclusion we have reached in this case.

III. The appellants contend that the verdict was not sustained by the evidence, and that it is contrary to the charge of the court. At the time of their marriage, the plaintiff was twenty-three and her husband was nineteen years of age. She was a dressmaker,

and had done considerable work, but her health was not good. She had made her home with her mother and a younger brother in Des Moines, but it appears that her mother was in debt, her household goods mortgaged, and that they had but scanty means of support. After the marriage, the plaintiff and George made their home with her mother, but in a short time they all went to the home of the defendants, in the same city, with some expectation of living there for a time. Trouble soon arose between them and the defendant Henry Price, and they sought another place of residence. There is irreconcilable conflict in the evidence, but we are of the opinion that the jury were authorized to find that the material facts were substantially as follows: The defendants never fully approved the marriage of the plaintiff to their son. During the few days that the two families were together at the home of the defendants, Henry Price complained that plaintiff's health was not good, that she would soon be a burden to his son; and that plaintiff and her mother had not disclosed to him their financial condition, and the state of plaintiff's health, before the marriage. He stated that he thought the plaintiff and George should separate; that it would be better if George were free, for in that case he would have a part of the estate, but he did not intend that any of his money should go outside of his family. For several months after their marriage, George lived a part of the time with the plaintiff and her mother, and a part of the time with defendants. He worked for several different firms and persons, and contributed something to the support of the plaintiff, but he did not remain long with any one employer. The defendants were active during that time in trying to induce him to leave the plaintiff. In the fall of 1888, George made his home most of the time with the defendants, meanwhile visiting the plaintiff occasionally. About

the first of December he went south and finally to Keokuk, and there secured work in a hotel. For about a month after he left Des Moines, the plaintiff did not hear from him, or know where he was; and when she applied to defendants for information they professed to be as ignorant as she was in regard to him, although they corresponded with him, and knew where he was and what he was doing. On the second day of January, 1889, George wrote to his wife, expressing much affection for her, and asking if she wished to be with him. Her answer appears to have been prompt, as he wrote to her again three days later, acknowledging the receipt of a telegram and a letter from her. His second letter was affectionate in terms, and in it he expressed a desire for her to be with him, said he would send for her in a few weeks, and cautioned her not to tell anyone where she was going, mentioning especially his own family. He wrote other letters of the same character, and the plaintiff soon joined him in Keokuk. They lived together there until about the fourth of February, 1889, when he left her.

During the first part of the time they were in Keokuk, George was kind and affectionate to the plaintiff, and they lived happily together. He received letters from the defendants during that time, and finally received one which the plaintiff did not read. When that was received, George told the plaintiff he was going to leave her, as the defendants wished him to do. He left the next day, but before going she obtained from him, without his knowledge, and kept several letters he had received from the defendants. After an absence of a few days he returned, and demanded the letters. She refused to surrender them, and he used profane language to her, seized her, struck her, choked her, knocked her down, threatened to kill her if she did not produce the letters, and said he wished he had minded his father before and left her. He then left

her in Keokuk, without means, and with a board bill for himself and herself unpaid. She finally paid the bill, and reached the home of her mother, in Des Moines, and commenced this action. Since that time he has called on her once or twice, and has written a few letters to her, asking her to return to him. Letter-press copies of them were taken by him, and there is little doubt that they were written for the purposes of this litigation. His conduct toward his wife has been most unmanly, and we are satisfied that, to a considerable extent, it was caused by the unwarranted interference of the defendants. The evidence in regard to the influence which the defendants exercised over their son while he and the plaintiff were together at Keokuk, to induce him to leave her, is not at all clear and satisfactory. But we are satisfied that the defendants had for months been endeavoring to separate the plaintiff and her husband, and we think the jury were authorized to find that the separation was accomplished by letters he received from them at Keokuk. His statements at the time he left her were to that effect, and his course can not be attributed to any other probable cause. Two juries have found for the plaintiff, and the evidence is such that we are of the opinion that we should not disturb the judgment for lack of evidence to support it.

IV. Objection is made to the ruling of the court in admitting evidence in regard to conversations between George and his father, and between his father and the mother of the plaintiff, when the two families were together at the home of the defendants.

We think the evidence was properly received as tending to explain the relation of the parties to the suit, and the motives which induced them to act.

Objection is also made to evidence, to show the property owned by defendant Henry Price. The evidence was properly admitted, not to enhance the amount of recovery, but to enable the jury to judge

more accurately of the weight and probable effect of the property inducement which the defendants held out to their son to abandon the plaintiff.

V. It is said that a fatal objection to all the evidence is that this action is against the defendants for a joint wrong, and that whatever of a wrongful nature was said or done by the defendants was not said or done jointly. We do not think this claim is sustained by the evidence. While it is true that each defendant did not participate directly in all of the conversations and acts of the other, yet there was evidence which tended to show that they acted in concert, and to accomplish a common object,—the separation of their son from the plaintiff.

VI. What we have said disposes of the controlling questions in the case. Others, including some based upon portions of the charge given, and the refusal of the court to give instructions asked, have been presented in argument, and carefully examined. We do not regard them as of sufficient importance to to be stated at length. It is sufficient to say that we do not find in them any reason for disturbing the judgment of the district court. It is therefore AFFIRMED.