## MARY J. WOLF *vs.* AMELIA FRANK.

*Action by Married Woman for Alienation of her Husband's Affections—*
*Evidence.*

A married woman may maintain an action in her own name against a defendant for alienation of the affection of the plaintiff's husband and loss of his society and support, under the Act of 1898, ch. 457, which authorizes married women to sue for torts committed against them as fully as if they were unmarried.

In an action against a woman for the alienation of the affection of the plaintiff's husband, evidence that the defendant on different occasions was heard to tell the plaintiff's husband to leave her house and not to come there again is not admissible, unless accompanied by evidence, showing that this was done before the suit was instituted, and that the defendant made a *bona fide* effort to keep the husband away.

In such action, evidence that the plaintiff had herself been guilty of improper relations with a certain man is admissible in mitigation of damages, whether the plaintiff's husband had knowledge of the alleged improper relations or not.

Appeal from the Circuit Court for Washington County (STAKE, J.)

The cause was submitted to the Court on briefs by : .

*Lewis D. Syester* for the appellant.

*Martin L. Keedy* and *Daniel W. Doub* for the appellee.

BOYD, J., delivered the opinion of the Court:

This suit was brought by the appellee against the appellant on March 31, 1900, by her next friend, Grafton C. Harper, but it was subsequently amended by striking out the next friend. The declaration alleges that the defendant wrongfully enticed and procured the husband of the plaintiff, unlawfully and without the consent and against the will of the plaintiff, to depart and remain absent from her home and society, whereby she lost the society, support and protection of her husband. There are two counts which are similar, excepting the first alleges that

the act complained of was done on the 25th day of December, 1899, while the second fixes no time. A demurrer was filed on the ground that the declaration stated no cause of action, under the law of this State, which was overruled. During the progress of the trial, which resulted in a verdict for the plaintiff, two exceptions were taken to rulings of the Court in excluding certain testimony offered by the defendant. The defendant appealed from the judgment and the questions presented for our consideration are the rulings of the Court on the demurrer and the offers of testimony embodied in the two bills of exception.

1. This is the first time a suit of this character has been before this Court. There has been but little, if any, difference of opinion as to the right of a husband to sue for what is termed "the loss of *consortium,*" that is, the loss of his wife's society, affection and assistance, and when any one, by the alienation of her affections, deprives him of his conjugal rights, he is liable to respond in damages. Indeed, such right has been sustained at least as far back as the case of *Winsmore* v. *Greenbank*, Willes' Reports, 577. The authorities are not so harmonious as to the right of the wife to sue for injuries sustained by her by being unlawfully deprived of the society, affection, etc., of the husband. But whatever differences now remain relative to it, are, for the most part, as to the source from which she acquired the right, rather than whether such right exists at all. In countries and States where the common law has prevailed, members of the bench and bar have been accustomed in the past to consider the rights and liabilities of married women as they existed under its rules, and although statutes have been passed from time to time enlarging their rights and increasing their liabilities, they have in many jurisdictions, including our own, been for the most part kept strictly within the lines fixed by legislative enactment. The tendency of modern legislation has been to greatly increase their powers and in many States of this country such rights are conferred and such liabilities imposed on them as will probably furnish Courts difficult problems to solve in deter-

mining who is the head of the house.    But whatever their legal rights have been in the past, they have, as a rule, surpassed their husbands in their capacity to appreciate and enjoy domestic happiness.   When, then, the marital rights of a woman are unlawfully invaded so as to cause this "loss of *consortium*," why should she not be entitled to have the wrong done her redressed by the law, as her husband would be, under such circumstances ?    If entitled to it, refusal to grant such redress can only be excused, if at all, on the ground that, by reason of her peculiar *status* as a married woman, no remedy had been or could be provided her, and hence we must inquire into and determine that question.

We have seen it stated that there are only two States in this country in which the question has arisen where the right of a married woman to maintain such an action is still denied. Whether that be correct or not, we cannot say, but in our investigation of the authorities we have only found two, Wisconsin and Maine, although most of the decisions are based on statutes.    In *Duffies* v. *Duffies*, 76 Wis. 374, it was decided that neither at common law nor under the statutes of that State, could a wife maintain an action against one enticing away her husband, for the loss of his society and support ; and in *Doe* v. *Roe*, 82 Me. 503, (affirmed in *Morgan* v. *Martin*, 92 Me. 190), the right is denied, apparently on other grounds. The Wisconsin case is not alone as to the right to sue at common law, and the statute in force when that case arose was held not to sustain the right of action.    The case of *Logan* v. *Logan*, 77 Ind. 558, cited in *Duffies* v. *Duffies*, is practically, although not in terms, overruled by *Haynes* v. *Nowlin*, 129 Ind. 581, so far as it affects this question ; and the case of *Van Arnam* v. *Ayers*, 67 Barb. 544, is overruled by *Bennett* v. *Bennett*, 116 N. Y. 584.    There are other cases which have denied the right of recovery, under the peculiar facts that were alleged or proven.    For example, in *Houghton* v. *Rice*, 174 Mass. 366, and *Neville* v. *Gile*, *ibid* 305, it was held that the declarations were not sufficient, as in that State a husband could not recover for the mere alienation of the wife's affec-

tions, but there must be the loss of the wife's *consortium* and a wife was in no better position than the husband.   Then there are cases in which a distinction is made between suits against strangers and those against the parents of the husband or wife.   If the latter act in good faith and without malice, they are generally relieved because they are under obligation by the law of nature to protect their children and relieve them when in distress.

But there are many authorities which sustain this character of suit.   That of *Foot* v. *Card*, 58 Conn. 1, is a leading one and has taken a more advanced position than most of the others, although it has been frequently referred to by other Courts.   After referring to the right of the husband to sue, JUSTICE PARDEE, in delivering the opinion of the Court, said: " Whatever inequalities of right as to property may result from the marriage contract, husband and wife are equal in rights in one respect, namely, each owes to the other the fullest possible measure of conjugal affection and society; the husband to the wife all that the wife owes to him.   Upon principle this right in the wife is equally valuable to her, as property, as is that of the husband to him."   He also said: " The law will permit no one to obtain redress for wrong, except by its instrumentality, and it will furnish a mode of obtaining adequate redress for every wrong.   This rule, lying at the foundation of all law, is more potent than, and it takes precedence of, the reason that the wife is in this regard without the pale of the law, because of her inferiority;" and again: " Wherever there is a valuable right and an injury to it, with consequent damage, the obligation is upon the law to devise and enforce such form and mode of redress as will make the most complete reparation."   After speaking of the reason of the general rule that a husband shall join in a suit for damages resulting from an injury to the person, property, reputation or feelings to the wife, he with great force shows why that should not be done in a case where the husband by reason of his own conduct has not suffered the injury and cannot ask for redress himself, and added: " To ask in his name would be to

plant the seeds of death in the case at the outset, and the
law does not compel those who have suffered wrong so to ask
for redress as to insure denial.    In a case of this kind the
wife can only ask for damages by and for herself; the law can-
not make redress otherwise than to her solely, apart from all
others, especially apart from her husband."    And the conclu-
sion is reached that of legal necessity, the damages for the
injury must be to her solely, and the suit could therefore be
maintained in her own name at common law.    In *Lynch* v.
*Knight*, 9 H. L. Cas. 577, LORD , CHANCELLOR CAMPBELL
thought that the wife could sue with her husband.    LORD
CRANWORTH was inclined to that view, but did not feel called
upon to express a decided opinion, as the case was to be dis-
posed of on other grounds.    LORDS BROUGHAM and WENSLEY-
DALE thought an action would not lie.    In *Bennett* v. *Bennett*:
116 N. Y. 584, the Court said : " A remedy not provided by
statute, but springing from the flexibility of the common law
and its adaptability to the changing nature of human affairs,
has long existed for the redress of the wrongs of the husband.
As the wrongs of the wife are the same in principle and are
caused by acts of the same nature as those of the husband,
the remedy should be the same."    That case, however, based
the right to maintain the action on the statute.    It fully recog-
nizes the right of the wife to damages for injury to her, but
questions her right to sue at common law, unless her husband
joins, and holds that the Code of that State, authorizing her
to sue alone, enabled her to maintain a suit of this character.
Some authorities hold that the common law gives a married
woman a cause of action, but by reason of her disability of
coverture the right remains in abeyance while she is married ;
there are others in which her right to damages is regarded as
belonging to her at common law, and hence, she can recover
under statutes enabling her to sue as a *feme-sole*, and still
others sustain her right to sue under statutes giving equal
rights to husband and wife, irrespective of any substantive
right existing at common law.    For authorities on the seveval
grounds see, in addition to the above, *Haynes* v. *Nowlin*, 129

Ind. 584; *Holmes* v. *Holmes*, 133 Ind. 386; *Seaver* v. *Adams*, 66 N. H. 142; *Warren* v. *Warren*, 89 Mich. 123; *Clow* v. *Chapman*, 125 Mo. 101, (s. c. 46 Am. St. Rep. 468, where there is an extensive note on the subject); *Hodgkinson* v. *Hodgkinson*, 43 Neb. 269; *Westlake* v. *Westlake*, 34 Ohio, St. 621; *Price* v. *Price*, 91 Iowa, 693; *Gernerd* v. *Gernerd*, 185 Pa. St. 233, and 15 *Ency. of Law*, (2nd ed.) 864, where many of the above and other cases are cited.

Under our statute (section 5 of Art. 45 of the Code, as amended by Act of 1898, chap. 457), married women have the power "to sue for the recovery, security or protection of their property, and *for torts committed against them, as fully as if they were unmarried.*" As it is applicable to this case, there would seem to be no room to doubt that the appellee can, in her own name, maintain this suit. That, in our opinion, she had a cause of action is apparent from what we have already said. Whether or not it was possible for her *to enforce* such a claim at common law while still married is not now material. We have frequently held, that for personal injuries to a wife, she must at common law sue jointly with her husband, but if he died before judgment, the action did not abate, but could be prosecuted by the widow; and even if he died after judgment, without disposing of it, it survived to her. "Independently of his wife the husband had no cause of action whatever for personal injury to her." *Clark* v. *Wootton*, 63 Md. 115. Of course that does not refer to his right to sue for loss of services, expenses incurred, etc., by reason of the injury to his wife. Manifestly, then, the wife had at common law a cause of action for such injuries, although she was prevented from enforcing it during coverture, without the joinder of her husband. In cases of this character, if it be admitted (although we do not determine that question), that she could not have sued at common law during coverture because her husband was a necessary party and he ought not to be a party to a suit brought to recover damages sustained through his own misconduct, yet if he had been dead, or had abandoned his wife and left the State, as in *Wolf* v. *Bauereis*, 72 Md. 481,

before the suit was brought, she could have sued as if she were a *feme-sole*, for her disability would then have been removed. As the Act of 1898 authorized her to sue, as if unmarried, for a tort committed against her, we think it gave her the right to sue in her own name even if the cause of action had arisen before this Act took effect ( January 1, 1899), as it emancipated her from the disability and her husband had no right to damages to be recovered by reason of his own misconduct. To permit his marital rights to attach to damages recovered for such a cause would be an acknowledgment of an injustice in the administration of the common law that ought not to be attributed to it or countenanced by any Court governed by its principles. If then her cause of action existed at common law, but was held in abeyance by reason of her disability of coverture, this statute relieved her of that disability, but, independent of that, such rights were conferred on married women by the Act of 1898, of which the above quotation is only a small part, as to remove all possible doubt as to the right of the wife to sue in cases of this character as the husband can. This suit was brought fifteen months after the Act of 1898 took effect, and there is nothing in the declaration to show that the cause of action arose before that time, but if it had, it would not have, for that reason, been defective or demurrable. The demurrer was properly overruled:

2. The defendant offered to prove by a witness that she "heard the defendant, Mrs. Wolf, tell Frank, the plaintiff's husband, to leave her home and not to come there any more, and that she saw the defendant push the said Frank out of the kitchen door on different occasions." That was objected to, and having been ruled out by the Court, its action is brought before us by the first bill of exceptions. Under some circumstances such testimony might be relevant, as reflecting upon the question as to whether the defendant did entice and procure the husband to abandon the plaintiff, but there is nothing in the record to show under what circumstances or when these things occurred. Every occasion referred to may have been after this suit was brought, so far as the offer shows, and all

that did take place may have been done for the very purpose
of building up a defense to the plaintiff's suit.   The occur-
rences were not said to have taken place in the presence of the
plaintiff, and unless it was shown that it was a *bona fide* effort
on the part of the defendant to keep the husband away from
her home, reflecting upon the question as to whether she was
responsible for his absenting himself from his own home, it
could not have aided the jury in reaching a proper conclusion.
All that was proffered to be proven may have been the result
of a quarrel between them and did not meet or explain the
testimony offered by the plaintiff; that he had continued to
live at the defendant's house from December, 1898, to the
time of trial.  If she did not want him there it would have
been an easy matter to get rid of him.   No error is shown by
the record to have been committed in that ruling.

3.  We think, however, there was error in the ruling as pre-
sented in the second bill of exceptions.   The defendant
offered the testimony of a witness that the plaintiff had had
improper relations with one Kieffer, in October, 1898, and
offered to prove knowledge of such fact by the plaintiff's hus-
band.   Whilst that would not be a bar to the action, unless it
was followed up by proof that the husband left his wife by
reason of her unfaithfulness and not by the procurement of the
defendant, it would have been proper to be considered by the
jury in mitigation of damages.   The plaintiff had proven that
on the 27th day of December, 1898, the husband of the plain-
tiff had his trunks and clothes removed from the home of
the plaintiff and went to the home of the defendant to live
and has been with her ever since.   That was only about two
months after the alleged improper relations by the plaintiff
with Kieffer and it might, in the opinion of the jury, have
been the cause of his leaving the plaintiff at that time, but, if
the jury had believed the statement, it certainly might have
affected the amount of damages awarded to her.   It is im-
possible to fix any definite rule in cases of this character to
guide the jury as to the *quantum* of damages to be allowed.
The loss of the society, affection, etc., of a husband to a true

wife is necessarily greater than to one who, herself, has not been faithful to her marriage vows. When a devoted wife, free from blame herself, has been deprived of the society, affections, etc., of her husband, by the intrigues and acts of another, she stands in a very different light before the law and before any intelligent jury from that of a woman who has been unfaithful herself. As we said in *Shufeldt* v. *Shufeldt*, 86 Md. 525. " There can be no surer means adopted to estrange husband and wife and stifle all affections that ever existed between them than the existence of improper relations, especially of a criminal nature, between one of them and another party." No woman who permitted another man to have improper relations with her could have the desire for the society and affection of her husband that the law assumes exists between husband and wife when it authorizes a suit for the unlawful interference with those conjugal rights, and a jury would not likely allow such a woman the same amount of damages as would be awarded to a plaintiff free from such fault. It is therefore a proper subject for the consideration of the jury, when such proof is before them. As was said in *Smith* v. *Masten*, 15 Wend. 280, " If the plaintiff was in the habit of improper intimacy with any other than her husband, her sense of moral propriety and regard for chastity could not be much offended by the loss of virtue of her husband. The guilt of defendant is not, therefore, diminished ; but the plaintiff has sustained less damages. The merits of the plaintiff, but not the demerits of the defendant, are less ; both, however, are considered by the jury in forming their verdict, and all the circumstances which diminish the one, or enhance the other, are proper subjects for their consideration." It is said on the part of the appellee that the proffer did not show when the husband had knowledge of the alleged improper relations, but if he never had any such knowledge, the evidence would have been admissible, as reflecting upon the extent of the injury to the plaintiff, sustained for the reasons we have given above, and if he did have such knowledge before he left his home to live, it might have materially reflected upon the ques-

tion as to whether the defendant was responsible for his leaving. It may be that there was no truth whatever in the alleged act of unfaithfulness, but that was a question for the jury and should have been submitted. The judgment must therefore be reversed for that error.

> *Judgment reversed and new trial awarded,*
> *the appellee to pay the costs.*