# DODGE v. RUSH.

ACTIONS; TORTS; HUSBAND AND WIFE; ALIENATION OF AFFECTIONS; CRIM. CON.; DIRECTION OF VERDICT; EVIDENCE; DECLARATIONS.

1. A separate action for a tort is maintainable by a wife in this District. (Following *Willis* v. *Jones,* 13 App. D. C. 482.)

2. The gist of the action for alienation of affections is the loss of *consortium;* namely, conjugal fellowship, company, co-operation and aid of the husband or wife; and alienation of affections is a matter of aggravation. Such an action is maintainable by the wife as well as the husband.

3. A wife has a right of action at common law for crim. con. with her husband. Her conjugal rights are, in principle, the same as his.

4. The court is never justified in directing a verdict, except in cases where, conceding the credibility of the witnesses, and giving full effect to every legitimate inference that may be deduced from their testimony, it is nevertheless plain that the party has not made out a case sufficient in law to entitle him to a verdict. (Following *Adams* v. *Washington & G. R. Co.* 9 App. D. C. 26, and *Ward* v. *District of Columbia,* 24 App. D. C. 524.)

5. The evidence in an action by a wife for the alienation of her husband's affections and for crim. con. reviewed and held sufficient to call for the submission of the case to the jury upon the question of whether the relations between the husband and the defendant were illicit.

6. Where, in an action by a wife for crim. con. with her husband, the existence of illicit relations between the husband and the defendant are found, it is for the jury to say whether the defendant thereby enticed and allured the husband, alienated his affections, and caused the plaintiff the loss of *consortium.*

7. In an action for alienation of affections and crim. con., where the declaration alleges criminal conduct on the part of the defendant and plaintiff's husband between specified dates, evidence of prior facts and circumstances of the same nature, connected with and explanatory of those proved within the period alleged, is admissible.

8. In an action by a wife for the alienation of the affections of her husband and for crim. con., testimony by the wife, of declarations made to her by her husband relating to the defendant, is not admissible.

No. 1663.   Submitted June 7, 1906.   Decided June 13, 1906.

HEARING on an appeal by the plaintiff from a judgment of the Supreme Court of the District of Columbia, on a verdict directed by the court, in an action to recover damages for the alienation of the affections of the plaintiff's husband and for criminal conversation.                                        *Reversed.*

The COURT in the opinion stated the facts as follows:

This is an action for damages for the alienation of the affections of plaintiff's husband, and for criminal conversation.

The declaration of the appellant, Annie J. Dodge, as plaintiff below, is in three counts.

Count 1 alleges the marriage of plaintiff with one Arthur J. Dodge on May 24, 1882, in the State of Wisconsin, the bonds of which remain undissolved. That while plaintiff and her said husband were living happily together the defendant, Mary E. Rush, intending to injure plaintiff and deprive her of the society of her said husband, on, to wit, February 22, 1902, and on divers other days between that time and December 3, 1904, wickedly debauched and carnally knew the said Arthur J. Dodge. That thereby the affection of the said Arthur J. Dodge for plaintiff was alienated and destroyed; and plaintiff was deprived of the comfort, fellowship, society, and assistance of her said husband in her domestic affairs. That by reason of the premises plaintiff suffered great mental anguish, loss of social reputation, etc., and sustained damage in the sum of $50,000.

Count 2, repeating the allegations as to her marriage, etc., charges the defendant with enticing and alluring her said husband to abandon plaintiff, thereby alienating his affection and depriving plaintiff of his affection, society, and assistance in her domestic affairs, and causing plaintiff great mental anguish, etc., to her damage in the sum of $50,000.

Count 3 repeats the allegations of marriage and domestic happiness in count 1, and charges the defendant with the commission of adultery with her said husband between February 22, 1902, and September 3, 1904, whereby plaintiff was deprived of the affection, society, and assistance of her said husband, and made to suffer great mental anguish, etc., to her damage in the sum of $50,000.

Defendant entered a plea of not guilty, and issue was joined thereon

At the close of the plaintiff's evidence a motion was made by the defendant to direct a verdict for her, which was granted, and from the judgment thereon plaintiff has appealed.

*Mr. Charles T. Hendler* and *Mr. Smith Thompson, Jr.,* for the appellant.

*Mr. Wm. Henry White* for the appellee.

Mr. Chief Justice SHEPARD delivered the opinion of the Court:

Whatever may have been the foundations of the ancient rule of the common law which denied the wife a right of action for the alienation of the affection of her husband, and consequent loss of *consortium,* the reasons assigned for making a distinction between the right of the husband and the right of the wife in such case has long ceased to exist. The modern rule is thus well stated by the court of appeals of New York: "The actual injury to the wife from the loss of *consortium,* which is the basis of the action, is the same as the actual injury to the husband from that cause. His right to the conjugal society of his wife is no greater than her right to the conjugal society of her husband. Marriage gives to each the same rights in that regard. Each is entitled to the comfort, companionship, and affection of the other. The rights of the one and the obligations of the other spring from the marriage contract, are mutual in character, and attach to the husband as husband and to the wife as

wife. Any interference with these rights, whether of the husband or of the wife, is a violation, not only of natural right, but also of a legal right arising out of the marriage relation. * * * As the wrongs of the wife are the same in principle, and are caused by acts of the same nature, as those of the husband, the remedy should be the same." *Bennett* v. *Bennett,* 116 N. Y. 584, 590, 6 L.R.A. 553, 23 N. E. 17. See also *Wolf* v. *Frank,* 92 Md. 138, 143, 52 L.R.A. 102, 48 Atl. 132; *Warren* v. *Warren,* 89 Mich. 123, 127, 14 L.R.A. 545, 50 N. W. 842; *Price* v. *Price,* 91 Iowa, 693, 695, 29 L.R.A. 150, 51 Am. St. Rep. 360, 60 N. W. 202; *Deitzman* v. *Mullin,* 108 Ky. 610, 50 L.R.A. 808, 94 Am. St. Rep. 390, 57 S. W. 247; *Betser* v. *Betser,* 186 Ill. 537, 52 L.R.A. 630, 78 Am. St. Rep. 303, 58 N. E. 249; *Gernerd* v. *Gernerd,* 185 Pa. 233, 236, 40 L.R.A. 549, 64 Am. St. Rep. 646, 39 Atl. 884.

The underlying ground of the common-law rule of discrimination between husband and wife in respect of this right, namely, the incapacity of the wife to maintain a separate action for a tort, has been swept away by the modern legislation that has so generally relieved the wife of the ordinary disabilities of coverture. See cases above cited; *Willis* v. *Jones,* 13 App. D. C. 482, 495.

The gist of the action for the alienation of affections is said to be the loss of *consortium,*—that is, the loss of the conjugal fellowship, company, co-operation, and aid of the husband or wife. Loss of *consortium* is the actionable consequence of the injury, and alienation of affections is a matter of aggravation. *Bigaouette* v. *Paulet,* 134 Mass. 123, 45 Am. Rep. 307; *Evans* v. *O'Connor,* 174 Mass. 287, 291, 75 Am. St. Rep. 316, 54 N. E. 557; *Neville* v. *Gile,* 174 Mass. 305, 54 N. E. 841; *Houghton* v. *Rice,* 174 Mass. 366, 368, 47 L.R.A. 310, 75 Am. St. Rep. 351, 54 N. E. 843.

While it is necessary to plaintiff's recovery in such an action to show that the defendant's misconduct was an effective cause of the loss of *consortium,* it is not necessary that it shall have been the sole cause. Any unhappy relations that may have existed between the plaintiff and her husband, not caused by the

conduct of the defendant, may affect the question of damages; but they are in no sense a justification or palliation of the defendant's conduct.  *Hadley* v. *Heywood,* 121 Mass. 236, 239; *Rice* v. *Rice,* 104 Mich. 371, 380, 62 N. W. 833.

One of the two counts of the declaration in this case for the alienation of the affections of plaintiff's husband, as we have seen, charges his debauchment.  The other charges that he was enticed and allured by the defendant, but omits the charge of illicit intercourse with him.  Both, however, charge the loss of *consortium* as the result of the defendant's misconduct.

The third count, as appears from its recital in the foregoing statement of the case, is for criminal conversation.

Appellee concedes that the husband is entitled to maintain an action for criminal conversation with his wife, and that it is only necessary for him to prove in such an action the marriage and adultery as charged.  But it is contended that the wife has no right of action at common law for criminal conversation with her husband.

For the reasons heretofore given for recognizing the wife's right of action for the alienation of the affections of her husband, this contention must be denied.

While the injurious consequences of a wife's adultery may be more far reaching because of probable difficulties and embarrassments in respect of the legitimacy of children, her conjugal rights are in principle the same, substantially, as his.  Whatever the ancient doctrine may have been, modern morals and law recognize the equal obligation and right of husband and wife. Nor can the consent of either to his or her defilement affect the right of action of the injured spouse against the other wrongdoer.

Having affirmed the right of the plaintiff to maintain the action as set out in the several counts of her declaration, it remains to consider whether the evidence introduced in support thereof was sufficient to require its submission to the determination of the jury.

"The provinces of the court and jury in the Federal judiciary system are separate and distinct, and the line of division be-

tween them must be carefully observed. The ascertainment of this boundary is often a matter of difficulty in a particular case, and when the difficulty arises doubts should be resolved in favor of the right of trial by jury, which is the constitutional right of every suitor in the courts of common law. It is the province of the jury to determine the credibility of the witnesses and the weight of the evidence, under proper directions in respect to the principles of law applicable thereto. And the court is never justified in directing a verdict except in cases where, conceding the credibility of the witnesses and giving full effect to every legitimate inference that may be deduced from their testimony, it is nevertheless plain that the party has not made out a case sufficient in law to entitle him to a verdict and judgment thereon. Stated in many different ways, this, we think, is substantially the doctrine of the adjudged cases that control in this jurisdiction." *Adams* v. *Washington & G. R. Co.* 9 App. D. C. 26, 30. See also *Ward* v. *District of Columbia,* 24 App. D. C. 524, 529.

Applying this rule to the evidence recited in the bill of exceptions, we are of the opinion that the court erred in directing the verdict.

There is no question of the sufficiency of the evidence to show that plaintiff was the lawful wife of Arthur J. Dodge, and that they were finally separated in May, 1903. Several children were born of this marriage; the last in 1899. The testimony then tended to show that plaintiff and her husband lived happily together from the time of their marriage in Wisconsin in 1882 until their removal to Washington in 1893 or 1894, and thereafter until November, 1899. That thereafter his manner to her began to change, and life commenced to be unpleasant. That from June, 1898, to May, 1900, her husband gave her an allowance of $125 per month, and thereafter gave her $5 per week while they remained in the home which they had previously purchased. That afterwards he only paid her board at a hotel. That they lived together until 1903, "but not happily since 1900." That since July or August, 1900, they "have not lived together as husband and wife."

The wife's cross-examination tended to show that pior to 1899 there had been occasional conditions of unpleasantness between them.

The evidence further tended to show that the defendant, Mrs. Mary E. Rush, occupied a home on S street, between 14th and 15th streets, N. W., from 1899 to June, 1904. It does not appear whether Mrs. Rush had a husband or not; if so, he did not live with her during the time mentioned.

The several servants of Mrs. Rush between the periods mentioned were introduced as witnesses. The first of these lived with Mrs. Rush from some time in 1899 to June 10, 1900, and testified that plaintiff's husband called to see Mrs. Rush two or three times a week during that period; and that she told witness he was getting her a place in a public office. The successor of this witness testified to the continued visits of Dodge to the defendant during her stay with the latter. His calls were three or four times a week. He generally came in the evening after 6 o'clock and would be in the house when witness left at 7:30. The testimony tended to show that Mrs. Rush's bedroom connected with the parlor or sitting room, on the first floor, and could be looked into through a window opening on the back yard. The same witness testified that when Dodge called and went in the parlor Mrs. Rush always closed the door, and used to tell witness to talk to her through the door when she wanted anything, and not to "rubber." That witness became inquisitive, and on two occasions, one in July and the other late in 1900, peeped in the back window. That on the first occasion defendant was lying down on the bed "in her negligee," and Dodge was sitting on the bed with his coat off; on the second, both were sitting on the bed with their arms about each other. The testimony of succeeding servants tended to show that Dodge's visits to the defendant continued until June, 1904; that he frequently called in the morning when defendant was ill, and would walk directly into her bedroom. The defendant's instructions were, when Dodge was in the house, to tell other callers that defendant was not in. The last servant testified to Dodge's continued visits, and that on February 22, 1902, he called during the

day and entered the parlor. That witness heard voices in the bedroom. That during the time, an express messenger called to have a package readdressed, because of some omission. That witness went to the bedroom door opening in the back hall and called defendant; it was then the voices were heard. That defendant came to the door of the parlor in the front hall, opening it sufficiently to receive the package, and was in her night clothes. That later defendant slept in a room on the second floor, and on one occasion witness saw Dodge and defendant go upstairs together, enter defendant's room, and close the door. That Dodge came down between 10 and 11 o'clock. The witness also testified to mailing letters to Dodge for defendant at various times.

There was other evidence to show that prior to December 7, 1904, certain rugs and carpets formerly used in Dodge's home, and supposed by plaintiff to have been sent off for storage, were in defendant's house. On December 7, 1904, a deputy marshal, under a writ of replevin, found 8 rugs and 2 pieces of carpet. Three of the rugs were in use in front and back parlor, and the remainder were in a closet. Other evidence tended to show that a bronze figure, formerly in Dodge's home, was on the mantel in defendant's room, and that Dodge's photograph occupied a place on the same mantel.

If the jury could give credit to the several witnesses, they might also find from the circumstances testified to by them that the relations of the parties were illicit.

The existence of such relations, if so found, would clearly entitle the plaintiff to a verdict under the third count. And it was for the jury to say whether or not the defendant thereby enticed and allured the plaintiff's husband, alienated his affections, and caused her the loss of *consortium.*

It is contended, on behalf of the appellee, that none of this evidence of circumstances occurring prior to the 22d day of February, 1902, the earliest date of criminal conduct alleged in the declaration, can be considered.

To this we do not agree. In the first place, no objection was made to the evidence when offered, and an amendment

of the pleadings might possibly take it out of the case on another trial. We are of the opinion, however, that the evidence was admissible. It is true that plaintiff's right to recover cannot be rested upon such testimony alone; but, as we have seen, there was other evidence within the period which would be sufficient foundation for a verdict. This being the case, the evidence of prior facts and circumstances of the same nature, connected with and explanatory of those within the alleged period, was admissible for that purpose. 2 Greenl. Ev. sec. 47; *Com.* v. *Merriam,* 14 Pick. 518, 25 Am. Dec. 420; *Com.* v. *Lahey,* 14 Gray, 91; *Conway* v. *Nicol,* 34 Iowa, 533, 534.

There is a minor question on which error has been assigned, that, if undecided, may arise on another trial. Plaintiff, as a witness on her own behalf, was asked to state certain declarations made by her husband to her. It does not appear clearly what these were, as the witness was not permitted to answer. But, assuming that they had relation to the defendant, or her conduct, we are of opinion that the court was right in their exclusion.

For the error committed in directing the verdict, the judgment will be reversed with costs, and the cause remanded for another trial in a manner not inconsistent with this opinion. It is so ordered.                                                        *Reversed.*