Earshlie I. **ALBERT**, Appellant,

v.

Margaret C. **McGRATH**, Appellee.

No. 14894.

United States Court of Appeals
District of Columbia Circuit.

Argued Jan. 13, 1960.

Decided March 24, 1960.

Petition for Rehearing Denied
April 18, 1960.

Mr. Arthur L. Willcher, Washington, D. C., with whom Mr. Morton Willcher, Washington, D. C., was on the brief, for appellant.

Mr. Jean M. Boardman, Washington, D. C., for appellee.

Before PRETTYMAN, Chief Judge, and WILBUR K. MILLER and DANAHER, Circuit Judges.

DANAHER, Circuit Judge.

Appellant's complaint charged the appellee with alienation of the affections of and criminal conversation with appellant's husband. The jury found for the appellee on the second claim but returned a verdict for the appellant to recover $5,000 damages on the alienation claim. Appellant and her husband had been residents of Maryland up to the time the husband was said to have abandoned the appellant. Prior thereto, the acts and conduct giving rise to the claim for relief occurred, at least in part, in the District of Columbia where appellee resided. The District Court granted appellee's motion for judgment n. o. v. on the ground that Maryland, by statute,[1] had abolished the

1. Md.Code Ann. art. 75C (1957) declares as the public policy of Maryland that the best interests of the people of that State will be served by the abolition of remedies heretofore provided by law for enforcement of actions "based upon al-

wife's right of action and hence denied her a remedy for alienation of affections. This appeal followed.

The District of Columbia has never by statute proscribed a remedy for alienation of affections. Recovery in such actions has long been permitted[2] and still is. We are confronted with the question, therefore, of whether the Maryland wife may maintain her action in this District or whether the Maryland statute follows her and precludes a remedy when the appellee resides in this jurisdiction and here engaged, as the jury found, in conduct and acts giving rise to the wife's claim. The District Judge quite properly gave careful attention to the problem.

He noted that in Dodge v. Rush it had been said that:

"The gist of the action for the alienation of affections is said to be the loss of *consortium*,—that is, the loss of the conjugal fellowship, company, cooperation, and aid of the husband or wife. Loss of *consor-*

*tium* is the actionable consequence of the injury, and alienation of affections is a matter of aggravation."[3]

██ He then reasoned that the wife could suffer a loss of consortium only at the *matrimonial domicile* in Maryland. He decided that since Maryland would have barred relief had the action there been brought, the Maryland statute must be applied here and so preclude recovery.[4] Clearly such would have been the correct conclusion had the action been brought in a federal court in Maryland inasmuch as the federal court in such circumstances must apply the law of the state in which it is sitting.[5] A very different problem arises on this record in view of the public policy and the law of the District of Columbia. If the harm arose here, the Maryland statute will not have extraterritorial effect and may not govern the case.[6]

██ The fundamentals of an action based upon alienation of affections are quite generally accepted wherever courts have recognized a remedy for that type of legal wrong.[7] "Consortium," at least

leged alienation of affections and alleged breach of promise to marry," and otherwise in pertinent part provides:

"§ 2. The rights of action heretofore existing to recover sums of money as damages for breach of promise to marry * * * and for the alienation of affections are hereby abolished.

* * * * *

"§ 4. No act hereafter done within this State shall operate to give rise, either within or without this State, to any of the rights of action abolished by this article.

"§ 5. It shall hereafter be unlawful for any person, either as a party or attorney * * * to file or serve * * * any process or pleading, in any court of the State, setting forth or seeking to recover a sum of money upon any cause of action abolished or barred by this article whether such cause of action arose within or without the State.

* * * * *

"§ 8. Any person who shall violate any of the provisions of this article shall be guilty of a misdemeanor which shall be punishable by a fine * * * or by imprisonment * * * in the discretion of the court.

"§ 9. This article shall be liberally construed to effectuate the objects and purposes thereof and the public policy of the State as hereby declared."

2. Dodge v. Rush, 1906, 28 App.D.C. 149; and see Richards v. Lorleberg, 65 App. D.C. 57, 79 F.2d 413, certiorari denied 1935, 296 U.S. 642, 56 S.Ct. 178, 80 L. Ed. 456; Trenerry v. Fravel, 1926, 56 App.D.C. 146, 10 F.2d 1011.

3. Dodge v. Rush, supra note 2, 28 App. D.C. at page 152.

4. See Albert v. McGrath, D.C.1958, 165 F.Supp. 461.

5. Erie R. Co. v. Tompkins, 1938, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188; Gaines v. Poindexter, D.C.W.D.La.1957, 155 F. Supp. 638; cf. Fahy v. Lloyd, D.C.Mass. 1944, 57 F.Supp. 156.

6. That certain conclusions appearing in Restatement, Conflict of Laws (1934) have not passed without challenge, see Rheinstein, The Place of Wrong, 19 Tul. L.Rev. 4 (1944) and Ehrenzweig, The Place of Acting in Intentional Multistate Torts, 36 Minn.L.Rev. 1 (1951).

7. See cases in 8A Words and Phrases, Consortium, pp. 360–364 (1951).

in intentional alienation situations [8] broadly includes a *mutual* bundle of rights [9] which attend the marriage status. We have further particularized with reference to Dodge v. Rush, supra, recognizing that "Each party to a marriage has a legal right to the affection and consortium of the other. *Deprivation of the same, intentionally caused by a third party*, is legally actionable." (Emphasis added.) [10]

Our courts provide the remedy by way of vindication of an intentional or malicious invasion of the marital relationship by an outsider. That partnership with all its attendant and mutual correlatives includes and is summed up in the term "consortium." Reason and experience demonstrate that a marriage involving a husband and wife as partners secures to each not only material services, but love, felicity, companionship, the exchange of ideas, consultation with respect to the family welfare and the rearing of children, and the maintenance of an intimacy abounding in reciprocal acts of kindness. In short, consortium includes all of the elements of the conjugal unity deriving from the status of husband and wife bound in the closest entity recognized by society. Each partner to the marriage contract has an equal right to the preservation of that consortium. Execution of the reciprocal duties of husband and wife to preserve and to bestow consortium requires joint participation, and each confers consortium upon the other. Consortium may, but need not, include coition which, indeed, may be entirely lacking due to injury or age at a time of life when each party to the union needs the other more than ever. When one partner is intentionally caused to transfer to an outsider the performance of the duty owed to the spouse, or to cease performance of that duty, this jurisdiction permits a remedy against the intentional wrongdoer. Our courts thus administer the public policy of the District of Columbia, in the larger sense because our society depends for its basic strength upon the maintenance of the family. Aid of the injured spouse is an incident of that policy.

Consortium between husband and wife is not necessarily domiciliary nor localized to their common bedroom. Perhaps all elements of conjugal union may find fullest flower during walks and talks over a weekend among the forests or during a cruise on Chesapeake Bay. There is no isolation of the wife's right or of the husband's duty within the narrow confines of a voting residence. Protection of the common consortium and a remedy for its intentional destruction are proper concerns [11] of our law.

■ The record shows various aspects in which the outsider here had invaded, and secured to herself the avails of, the consortium owed to the wife. We mention only one instance. The wife with her little daughter had found the "other woman" in company of her husband at Haines Point, here in the District. Articles which had belonged in the home of the husband and wife had been brought by him to a picnic tryst with the appellee. The over-wrought wife in the course of a melee had set upon her rival and had struck her. "My husband came and he hit me and sent me home." We need not explore further the element of deprivation so evidenced. It is sufficient for

8. As distinguished from negligent "loss of services" problems, Hitaffer v. Argonne Co., 87 U.S.App.D.C. 57, 183 F.2d 811, 814, 23 A.L.R.2d 1366, certiorari denied 1950, 340 U.S. 852, 71 S.Ct. 80, 95 L.Ed. 624. We there decided a wife might recover for loss of consortium due to a negligent physical injury to her husband. Maryland has denied such recovery in negligence actions. Coastal Tank Lines v. Canoles, 1955, 207 Md. 37, 113 A.2d 82.

9. Brown, The Action for Alienation of Affections, 82 U.Pa.L.Rev. 472 (1934).

10. Fleming v. Fisk, 1936, 66 App.D.C. 350, 87 F.2d 747.

11. As demonstrated by Ehrenzweig, supra note 6, one aspect of that concern is "admonitory." Some might think it punitive. See Eclov v. Birdsong, 1948, 83 U.S.App. D.C. 104, 166 F.2d 960.

us to note only that the husband's consortium was no longer available to this appellant wife. Other acts and circumstances which occurred within the District of Columbia amply demonstrate to us that the remedy was here properly sought. In this view the statute of Maryland barring there a right of action for acts "hereafter done within this State" [12] had no application.

The place of wrong, the deprivation, was in the District of Columbia.[13] Here our public policy has decreed a remedy for that wrong. Here the "outsider" responsible for that wrong had residence. Here she was sued. In our view it was error to deny the wife the verdict the jury gave her.

Reversed with direction to enter judgment on the verdict.

12. See note 1 supra.

13. See Gordon v. Parker, D.C.Mass., 83 F. Supp. 40, affirmed on other grounds, 1

Cir., 1949, 178 F.2d 888; cf. Orr v. Sasseman, 5 Cir., 1956, 239 F.2d 182.