Harold C. HINTON, Virginia S. Hinton, Appellants,

v.

Eva Robertson HINTON and Sidwell Friends School.

No. 23294.

United States Court of Appeals, District of Columbia Circuit.

Argued April 20, 1970.

Decided June 29, 1970.

Mr. Pierre E. Dostert, Washington, D. C., for appellants.

Mr. Dickson R. Loos, Washington, D. C., for appellees.

Before BAZELON, Chief Judge, and LEVENTHAL and WILKEY, Circuit Judges.

WILKEY, Circuit Judge:

Plaintiffs Harold C. and Virginia S. Hinton are parents of a minor child, John Robertson Hinton.  Defendant Eva Robertson Hinton is the grandmother of the minor.  Over a period of the time in question John Hinton attended Sidwell Friends School, also defendant herein.

Plaintiffs' Complaint is styled "Alienation of Affections, Conspiracy, and for

22.  See generally Cole, Report on the Treatment of Drug Addiction, in Task Force Report: Narcotics, *supra* note 19, at 135.

Injunctive Relief." It alleges a series of actions by the parties which add up to the conclusory opinion of the pleader that the two defendants, the grandmother and the Sidwell Friends School, had alienated the affections of the minor John Hinton and had conspired to do so. After motions for summary judgment, the District Court granted the defendants' motion and dismissed the complaint with prejudice.

The issues on this appeal are the usual issues in this situation, i. e., Did the complaint state a cause of action upon which relief could have been granted? and, Was there a genuine issue of any fact material to the disposition of the case?

We find that the complaint did state a cause of action and that there were genuine issues of material fact, and therefore reverse and remand the case to the District Court for appropriate disposition in accordance with this opinion.

### I.

██ We need not dwell long upon the facts or the law involved in this little family quarrel. Count one of the complaint was labeled "for Alienation of Affection," a label which is somewhat misleading as to the real nature of the action stated here. "Alienation of affection" carries with it certain conjugal connotations not present in the parent-child relationship, hence it is not surprising that ancient common law conferred no right of action upon the parent or child for simple alienation of affections, and it has been so held in the District of Columbia.[1] Looking beyond the label at the package of facts alleged, and taking these as true as we do on motion for summary judgment, the complaint does state a cause of action for

the tort which is usually termed "harboring." The complaint specifically alleged in paragraph 4:

> In February 1966, plaintiffs instructed their minor child to return to the family residence. This the child refused to do and since that time defendant Eva R. Hinton has wrongfully and unlawfully harbored the minor child at her residence, and has aided and abetted the delinquent refusal of the minor child to obey his lawful parents.

Plaintiffs reiterated this in their "Statement of Genuine Issues" filed in response to defendants' motion for summary judgment.*

It is undisputed here that the plaintiffs did willingly place John Hinton to live with his grandmother at the time they were making a European trip. There are contradictory claims as to whether this custody of the grandmother was to be temporary or permanent, and as to whether the grandmother by any action on her part induced, persuaded, or encouraged the minor child not to return to his home with his parents after their return.

██ On these facts we find applicable the Restatement of Torts, § 700,

*Inducing Minor Child to Leave or Not to Return Home.*

> One who, without a privilege to do so, * * * (c) with knowledge that it [the child] has left its home and that the parent is unwilling that the child should be absent, induces it not to return thereto or prevents it from so doing, is liable to the parent, who is legally entitled to the child's custody.

Dodge v. Rush, 28 App.D.C. 149, 8 Ann. Cas. 671 (1906) ; Albert v. McGrath, 107 U.S.App.D.C. 336, 278 F.2d 16 (1960) ; Pleasant v. Washington Sand & Gravel Co., 104 U.S.App.D.C. 374, 262 F.2d 471 (1958).

---

[1]. As might be surmised, the cases focused upon the right to consortium in the marital relationship; interference with this right gave rise to the action for alienation of affections. Finding nothing similar to loss of consortium in the parent-child relationship, the conclusion was reached that no such cause of action existed.

* No affidavits were filed by either side.

The Restatement comments:

[T]he action can be maintained against one who, with knowledge that the child is away from home against the will of the parent, imprisons it or induces the child, whether by affording it employment or otherwise, not to return home. No action can be maintained, however, against one who merely gives shelter and sustenance to a child known by the actor to have left home without the parent's permission, if the child is not induced by other means to remain away from its home. \* \* \* [I]t is necessary that the actor know that the child is away from home against the will of the parent. Unless the actor is privileged, \* \* .\* his motive or purpose in preventing the child from returning home or inducing it not to return, is immaterial. Thus, the actor may be inspired by motives of kindness and affection toward the child but none the less become liable for interfering with the interests of its law-- ful custodian.

\* \* \* [S]ervice is not a necessary element of a cause of action. \* \* \* The deprivation to the parent of the society of the child is itself an injury which the law redresses.

Prosser on Torts § 118 is to the same effect.

[T]he defendant may be liable for abducting the child by force, for enticing it away from its parents, or for "harboring" it to remain away from home. The consent of the child is, of course, no defense to the parent's action. As in the case of husband and wife, the interference with the relation must be a deliberate one, although not necessarily motivated by ill will or anything other than kindness or affection towards the child, and there is no liability for harboring or employing a minor unless there is reason to believe that it is without the parent's consent.

We hold with the Restatement and the view of those cases "that the real cause of action is the interference with the relation," and that "loss of services is not essential where a child has been taken from its parents."[2]

The facts alleged here are very close to those recited in the comments quoted from the Restatement; there was alleged a cause of action stated for the tort usually known as harboring, which the Restatement simply terms "Inducing Minor Child to Leave or Not to Return Home." No original enticement by the grandmother was necessary to be alleged; only inducing the child not to return to the parents is sufficient to constitute the cause of action.[3] Whether an action would lie under circumstances involving neither a change of the child's location, nor enticement, nor a loss of the child's services we need not decide in this case. However, if the real cause of action is the interference with the relationship, such interference could arise in a variety of circumstances not necessarily including displacement, enticement, or loss of services of the child. Reciprocally, there may also be found a similar cause of action on behalf of the child.[4]

## II.

As to the disputed issues of material fact, probably the most important is illustrated by paragraph 5 of defendants' Statement of Undisputed Material

2. Prosser on Torts, § 118 (3rd ed. 1964).

3. Loomis v. Deets, 80 Md.XVIII, 30 A. 612 (CA Md.1894).

4. We note that some sections of the Restatement of Torts dealing with interference with the parent-child relationship (e. g., 703 and 705) still speak of the loss of services in the old agrarian sense as an important element in any actionable offense, thus reiterating the old common law approach. In a proposed new section (702 A) alienation of the parent's affections, without more, is no ground of liability; but one who induces a parent to leave his minor child, or not to return to it, is subject to liability to the child for the loss of parental care or support.

Facts, filed in support of their Motion for Summary Judgment:

Sometime in 1966, plaintiffs instructed John Hinton to return to their home. He refused. Defendant Eva Hinton did nothing to detain the said John Hinton from leaving.

To which the plaintiffs replied:

Disputed. In early 1966 plaintiffs instructed John Hinton to return to the family home, which he refused to do. Plaintiffs requested defendant Eva R. Hinton to cease harboring John Hinton in her home, which request she refused, stating in effect that John Hinton could do as he wished.

The fact question, of course, is whether Eva Hinton did anything to encourage the minor child, John Hinton, to remain away from custody of his parents, which actions might constitute a cause of action here.

There also appears to be a fact issue as to whether the original placing of the minor John Hinton with his grandmother Eva Hinton was intended to be temporary or permanent, as shown by defendants' Statement of Undisputed Material Facts, paragraph 3, and the reply by plaintiffs, paragraph 3.

On September 20, 1966 defendant Eva Hinton filed an action for custody of the minor child John Hinton. The facts as to the prosecution, status, and ultimate outcome of this appear likewise to be in dispute; at least they are not clear from this abbreviated record.

With these facts definitely material to the issue of the grandmother's allegedly inducing the minor child not to return to his parents, the case was not ripe for summary judgment as to the defendant Eva Hinton.

The defendant Sidwell Friends School stands on a different footing however. We are unable to find in the complaint any cause of action, whether for inducing the minor son to remain away from his parents or conspiracy with the grandmother to do so or otherwise stated against Sidwell Friends School. The harboring allegation of paragraph 4 of Count One of the complaint is directed to the grandmother Eva Hinton only. The actions of the school, in permitting the attendance of John Hinton contrary to the instructions of the parents but after the custody dispute between the parents and the grandmother had arisen, in requesting the customary physical examination of the student, in awarding a diploma to John Hinton on graduation, all of which are compatible with the residence of a child at either the home of his parents or his grandmother, do not support any allegation of conspiracy with the grandmother to induce the child to remain with her. Nor do the two letters written by the general counsel of the Sidwell Friends School to the defendant Eva Hinton's attorney and to the headmaster of Sidwell Friends School. Both are carefully hedged lawyer-like instructions, disclaiming and advising against the school taking sides in any way in this family quarrel.

We think that summary judgment as to the defendant Sidwell Friends School was properly granted and it is therefore affirmed.

As to the defendant Eva R. Hinton, summary judgment of the District Court is reversed, and the cause is remanded to the District Court for trial in accordance with this opinion.